**UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| GRACE OCEAN PRIVATE LIMITED, as Owner of the M/V DALI, and SYNERGY MARINE PTE LTD, as Manager of the M/V DALI, | |
| Plaintiffs, | Civil Action No. 2:25-cv-04374-KNS |
| v. | **ORAL ARGUMENT REQUESTED** |
| HYUNDAI HEAVY INDUSTRIES CO., LTD., | |
| Defendant. | |

**HD HYUNDAI HEAVY INDUSTRIES CO., LTD.'S MEMORANDUM OF LAW
IN SUPPORT OF ITS MOTION TO DISMISS THE ACTION OR,
IN THE ALTERNATIVE, STAY PENDING ARBITRATION**

**TABLE OF CONTENTS**

INTRODUCTION ........................................................................................................1

BACKGROUND ........................................................................................................1

    A.  Construction, Ownership, And Operation Of The M/V *Dali* (2014-2024) .................1

    B.  Allision Between The M/V *Dali* And The Francis Scott Key Bridge ..........................4

    C.  The Limitation Of Liability Proceeding ...............................................................4

    D.  LMAA Arbitration Brought By HHI ...................................................................5

    E.  The 2002 Pennsylvania Foreign Business Corporation Registration ...........................5

    F.  Hyundai Heavy Industries Co., Ltd.'s Corporate Reorganizations ..............................6

ARGUMENT ...........................................................................................................8

  I.  The Complaint Should Be Dismissed For Lack Of Personal Jurisdiction.........................8

    A.  This Court Lacks General And Specific Personal Jurisdiction Over HHI...................8

    B.  HHI Has Not Consented To Personal Jurisdiction In Pennsylvania...........................10

    C.  Pennsylvania's Consent Requirement Violates The Dormant Commerce
        Clause.................................................................................................15

  II.  The Complaint Should Be Dismissed Under *Forum Non Conveniens* .............................17

  III.  Plaintiffs' Claims Should Be Sent To Arbitration ................................................20

    A.  The Parties Have A Valid Arbitration Agreement....................................................21

    B.  The Parties' Arbitration Agreement Delegates Arbitrability Determinations To
        The Arbitrator And Covers Plaintiffs' Claims.................................................22

  IV.  Plaintiffs Have Released Their Claims ...........................................................24

CONCLUSION..........................................................................................................25

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Abdurahman v. Prospect CCMC LLC,*
    42 F.4th 156 (3d Cir. 2022) ...........................................................................21, 22

*Adler v. Gruma Corporation,*
    135 F.4th 55 (3d Cir. 2025) ................................................................................20

*Aldossari ex rel. Aldossari v. Ripp,*
    49 F.4th 236 (3d Cir. 2022) ..................................................................................8

*Amazon Produce Network, LLC v. NYK Line,*
    143 F. Supp. 3d 252 (E.D. Pa. 2015) .................................................................19

*Amoco Egypt Oil Company v. Leonis Navigation Company,*
    1 F.3d 848 (9th Cir. 1993) ..................................................................................10

*Atlantic Marine Construction Company v. United States District Court for*
    *Western District of Texas,*
    571 U.S. 49 (2013).................................................................................17, 18, 19

*In re Avena,*
    92 F.4th 473 (3d Cir. 2024) ................................................................................25

*Bacchus Imports, Ltd. v. Dias,*
    468 U.S. 263 (1984)............................................................................................16

*Barth v. Walt Disney Parks & Resorts United States, Inc.,*
    206 F. Supp. 3d 1026 (E.D. Pa. 2016), *aff'd*, 697 F. App'x 119 (3d Cir. 2017) ......................8

*Brayman Construction Corporation v. Home Insurance Company,*
    319 F.3d 622 (3d Cir. 2003)...............................................................................23

*Burger King Corporation v. Rudzewicz,*
    471 U.S. 462 (1985)....................................................................................10, 15

*In re Burlington Coat Factory Securities Litigation,*
    114 F.3d 1410 (3d Cir. 1997)..........................................................................2, 24

*Chassen v. Fidelity National Financial, Inc.,*
    836 F.3d 291 (3d Cir. 2016)...............................................................................23

*Coinbase, Inc. v. Suski,*
    602 U.S. 143 (2024)............................................................................................22

*Cornelius v. CVS Pharmacy Inc.*,
    133 F.4th 240 (3d Cir. 2025) ...........................................................................20

*Department of Revenue of Kentucky v. Davis*,
    553 U.S. 328 (2008).........................................................................................16

*Doe 1 v. Deutsche Bank Aktiengesellschaft*,
    671 F. Supp. 3d 387 (S.D.N.Y. 2023)............................................................24

*Dorr v. GCT Global Container Terminals Inc.*,
    2025 WL 560627 (3d Cir. Feb. 20, 2025).........................................................8

*El Paso Production GOM v. Smith*,
    2005 WL 167588 (E.D. La. Jan. 25, 2005) .......................................................9

*Epic Systems Corporation v. Lewis*,
    584 U.S. 497 (2018).........................................................................................21

*Erie Telecommunications, Inc. v. City of Erie*,
    853 F.2d 1084 (3d Cir. 1988)..........................................................................25

*Field Intelligence Inc. v. Xylem Dewatering Solultions Inc.*,
    49 F.4th 351 (3d Cir. 2022) ............................................................................21

*Fischer v. Federal Express Corporation*,
    42 F.4th 366 (3d Cir. 2022) ..............................................................................8

*Fisher v. Teva PFC SRL*,
    212 F. App'x 72 (3d Cir. 2006) .......................................................................11

*Ford Motor Company v. Montana Eighth Judicial District Court*,
    592 U.S. 351 (2021).......................................................................................8, 9

*General Electric Company v. Deutz AG*,
    270 F.3d 144 (3d Cir. 2001)............................................................................15

*Glencore Grain Rotterdam B.V. v. Shivnath Rai Harnarain Company*,
    284 F.3d 1114 (9th Cir. 2002) ........................................................................11

*Haskins v. Point Towing Company*,
    421 F.2d 532 (3d Cir. 1970)............................................................................25

*Hasson v. FullStory, Inc.*,
    114 F.4th 181 (3d Cir. 2024) ............................................................................8

*Henry Schein, Inc. v. Archer & White Sales, Inc.*,
    586 U.S. 63 (2019)..........................................................................................22

iii

*IAC/InterActiveCorp v. Roston*,
    44 F.4th 635 (7th Cir. 2022) ...........................................................................18

*Jean-Paul Weg LLC v. Director of New Jersey Division of Alcoholic Beverage Control*,
    133 F.4th 227 (3d Cir. 2025) ...........................................................................15

*John Wyeth & Brother v. CIGNA International Corporation*,
    119 F.3d 1070 (3d Cir. 1997)...........................................................................25

*KPMG LLP v. Cocchi*,
    565 U.S. 18 (2011) (per curiam) ......................................................................21

*Levien v. hibu plc*,
    475 F. Supp. 3d 429 (E.D. Pa. 2020) ..............................................................17

*In re Libel & Petition of Gemini Navigation, S.A.*,
    1996 WL 544236 (S.D. Tex. Mar. 1, 1996).......................................................9

*Lupian v. Joseph Cory Holdings LLC*,
    905 F.3d 127 (3d Cir. 2018)..............................................................................24

*M/S Bremen v. Zapata Off-Shore Company*,
    407 U.S. 1 (1972) .............................................................................................19

*Mallory v. Norfolk Southern Railway Company*,
    600 U.S. 122 (2023)................................................................................. *passim*

*Marks v. United States*,
    430 U.S. 188 (1977).........................................................................................12

*Mator v. Wesco Distribution, Inc.*,
    102 F.4th 172 (3d Cir. 2024) ...........................................................................20

*Metcalfe v. Renaissance Marine, Inc.*,
    566 F.3d 324 (3d Cir. 2009)...............................................................................8

*National Pork Producers Council v. Ross*,
    598 U.S. 356 (2023).........................................................................................16

*Orabi v. Attorney General of the United States*,
    738 F.3d 535 (3d Cir. 2014)...............................................................................2

*Pearce v. Mizuho Bank, Ltd.*,
    2018 WL 4094812 (E.D. Pa. Aug. 27, 2018) ....................................................8

*Pike v. Bruce Church, Inc.*,
    397 U.S. 137 (1970).........................................................................................16

*Piper Aircraft Company v. Reyno*,
    454 U.S. 235 (1981) ..................................................................................19, 20

*Rent-A-Center, West, Inc. v. Jackson*,
    561 U.S. 63 (2010) ..........................................................................................23

*Richardson v. Coverall North America, Inc.*,
    811 F. App'x 100 (3d Cir. 2020) ....................................................................22

*Sanders v. Ethicon, Inc.*,
    2015 WL 1781572 (E.D. Pa. Apr. 16, 2015) ..................................................20

*Shaver v. Siemens Corporation*,
    670 F.3d 462 (3d Cir. 2012) ............................................................................23

*Sinochem International Company v. Malaysia International Shipping
    Corporation*,
    549 U.S. 422 (2007) ........................................................................................17

*Skidmore v. Led Zeppelin*,
    106 F. Supp. 3d 581 (E.D. Pa. 2015) ................................................................8

*Smith v. Spizzirri*,
    601 U.S. 472 (2024) ........................................................................................21

*Spin Master Ltd. v. Entertainment Business, LLC*,
    2024 WL 3850796 (E.D. Pa. Aug. 15, 2024) ..................................................19

*Tennessee Wine & Spirits Retailers Association v. Thomas*,
    588 U.S. 504 (2019) ........................................................................................15

*Van Cauwenberghe v. Biard*,
    486 U.S. 517 (1988) ........................................................................................17

*In re Verso Corporation*,
    806 F. App'x 130 (3d Cir. 2020) ....................................................................25

*Viking River Cruises, Inc. v. Moriana*,
    596 U.S. 639 (2022) ........................................................................................18

*Young v. Experian Information Solutions, Inc.*,
    119 F.4th 314 (3d Cir. 2024) ..........................................................................20

**Federal Statutes and Rules**

9 U.S.C. § 2 ............................................................................................................21

9 U.S.C. § 3 ............................................................................................................21

9 U.S.C. § 4 ................................................................................................................21

9 U.S.C. § 202 ............................................................................................................21

9 U.S.C. § 206 ............................................................................................................21

46 U.S.C. § 30501 ........................................................................................................4

46 U.S.C. § 30523 ........................................................................................................5

Fed. R. Civ. P. 12 .........................................................................................8, 20, 24, 25

**State Statutes**

15 Pa. Cons. Stat. § 146 .............................................................................................14

42 Pa. Cons. Stat. § 5301 ...........................................................................................10

42 Pa. Cons. Stat. § 5322 .............................................................................................8

**Other Authorities**

*Annual Reports in Pennsylvania*, Commonwealth of Pennsylvania,
    https://www.pa.gov/agencies/dos/programs/business/types-of-filings-and-
    registrations/annual-reports (last visited Sept. 22, 2025) ........................................14

Arbitration Act 1996,
    Chapter 23, § 30 (UK) ............................................................................................22

*Concerning*, Oxford English Dictionary,
    https://doi.org/10.1093/OED/1729801011 (last visited Sept. 22, 2025) ...............23

London Maritime Arbitrators Association, *The LMAA Terms 2021*,
    https://lmaa.london/wp-content/uploads/2022/11/LMAA-Terms-2021.pdf (last
    visited Sept. 22, 2025) ............................................................................................23

## INTRODUCTION

Grace Ocean Private Limited and Synergy Marine Pte Ltd. (together, "Plaintiffs") are the owner and manager, respectively, of the M/V *Dali*, a container ship built by a predecessor to HD Hyundai Heavy Industries Co., Ltd. ("HHI") in the Republic of Korea in 2014. On March 26, 2024, after almost a decade traversing the globe without any significant issues, the ship Plaintiffs have owned and operated since 2016 struck (or allided with) the Francis Scott Key Bridge in Baltimore, Maryland, killing six people, injuring two more, causing over one billion dollars in damage to the bridge, and harming the economy and environment of the entire region. Shortly after the allision, Plaintiffs initiated an Exoneration from or Limitation of Liability proceeding (the "LoL Action"), a specialized maritime proceeding, in the District of Maryland, seeking to evade financial responsibility for their misconduct. Sixteen months into the LoL Action, Plaintiffs filed this lawsuit against "Hyundai Heavy Industries Co., Ltd." hoping to shift onto HHI liability for their irresponsible decision to launch a poorly maintained vessel into a critical waterway.

Plaintiffs' claims are meritless (and, in any event, were contractually released years ago), but they also fail to meet multiple threshold requirements: this Court lacks personal jurisdiction over HHI; dismissal is warranted under *forum non conveniens*; and this litigation should be stayed in favor of an already-initiated arbitration. In short, this case should never have been filed.

## BACKGROUND

### A.    Construction, Ownership, And Operation Of The M/V *Dali* (2014-2024)

HHI built the M/V *Dali* in 2014. *See* Compl. ¶ 4.[1] Between 2013 and 2021, HHI (or its predecessor companies) signed a series of agreements with Grace Ocean and/or Synergy (or their

---

[1] Citations to "Compl." are to Plaintiffs' Complaint filed at ECF No. 1. Citations to exhibits ("Ex.") are to those exhibits attached to the Declaration of Kyungwoon Kim filed herewith. Citations to the "LoL Action Dkt." refer to publicly available filings in *In re the Petition of Grace*

predecessors in interest).  In May 2013, Hyundai Heavy Industries Co., Ltd. and Stellar Marine LLC (the first owner of the vessel) executed a contract governing the vessel's construction and delivery, as well as any warranties, defects, or liabilities (the "Shipbuilding Contract").  *See* Ex. E.  The warranty provision guaranteed the *Dali* against defects "for the period of twelve (12) months from the date of delivery," *id.* art. IX, § 1, and stated that, thereafter, HHI would "in no circumstance and on no ground whatsoever … have any responsibility or liability," *id.* art. IX, § 4(a).  The Shipbuilding Contract further stated that at no time would HHI have any "liability or responsibility whatsoever or howsoever arising for or in connection with any consequential or special losses, damages or expenses … [or] any liability to a third party."  *Id.*

The Shipbuilding Contract also included an arbitration provision (the "Arbitration Clause") that identifies both the forum and the format for resolving any dispute between the parties.  Section 1 of the Arbitration Clause provides in relevant part:

> If any dispute or difference shall arise between the parties hereto concerning any matter or thing herein contained, or the operation or construction thereof, or any matter or thing in any way connected with this CONTRACT or the rights, duties or liabilities of either party under or in connection with this CONTRACT, then, in every such case, the dispute or difference shall be referred to arbitration in London, England.

Ex. E art. XIV, § 1.  Section 2 of the Arbitration Clause states:

> Any arbitration arising hereunder shall be governed by and construed in accordance with the Arbitration Act 1996 of England or any statutory modification or re-enactments thereof for the time being in force and with the rules of the London Maritime Arbitrator[]s Association for the time being in force.  The award of the Arbitration Tribunal shall be final and binding upon parties hereto.

---

*Ocean Private Limited for Exoneration from or Limitation of Liability*, No. 24-cv-00941 (D. Md.). This Court may take judicial notice of the docket and filings in that case, *Orabi v. Att'y Gen. of the U.S.*, 738 F.3d 535, 537 n.1 (3d Cir. 2014), and Plaintiffs' Complaint relies on and integrates the Petition in the LoL Action by reference, Compl. ¶¶ 40, 81; *see In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) (Alito, J.).

*Id.* art. XIV, § 2.

The shipbuilding arm of Hyundai Heavy Industries Co., Ltd. began construction of the ship in 2014 in South Korea. *See* Kim Decl. ¶ 34. The vessel was delivered in early 2015 to Stellar Marine and was registered in the Marshall Islands. *See id.*; *see also* Compl. ¶ 4.

In September 2016, ownership of the M/V *Dali* was transferred from Stellar Marine to Grace Ocean. At the time, Hyundai Heavy Industries Co., Ltd., Stellar Marine, Lepta Shipping Co., Ltd. (an intermediate buyer), and Grace Ocean entered into a contract (the "Quadripartite Assignment Agreement") to clarify the assignment of rights among the four parties, including those in the Shipbuilding Contract. *See* Ex. F.[2]

In October 2021, Grace Ocean, Synergy, and Hyundai Heavy Industries Co., Ltd. executed a "Settlement Agreement" to resolve, without conceding or assigning liability, all claims relating to the ship's construction and warranty. *See* Ex. G. The first paragraph of the Settlement Agreement provided that Hyundai Heavy Industries Co., Ltd. (or Hyundai Global Service acting for and on its behalf) "shall pay USD 170,800 … to the Buyer in full and final settlement of any and all claims and disputes including the Vessel's delivery pending items under the Shipbuilding Contract." *Id.* ¶ 1. The second paragraph stated that "[t]he Buyer hereby releases and forever discharges [Hyundai Heavy Industries Co., Ltd.] and Hyundai Global Service from any and all obligations and liabilities arising in relation to the matters set out in paragraph 1." *Id.* ¶ 2. The Settlement Agreement also stated that "[t]he governing law and arbitration clauses contained in the Shipbuilding Contract shall also apply to this Settlement Agreement," thereby incorporating the Arbitration Clause, quoted above, in full. *Id.* ¶ 5.

---

[2] The Quadripartite Assignment Agreement, consistent with the Shipbuilding Contract, also provided that "any dispute arising out of or in connection with [the Quadripartite Assignment Agreement] shall be referred to arbitration in London." Ex. F at 2 ¶ 8.

### B.    Allision Between The M/V *Dali* And The Francis Scott Key Bridge

In the early morning hours of March 26, 2024, the M/V *Dali* was departing the Port of Baltimore towards Sri Lanka, with an ultimate destination in China.  Compl. ¶¶ 10-11.  After multiple losses of power that affected certain aspects of the M/V *Dali*'s propulsion and steering, the Vessel struck the Francis Scott Key Bridge located at the outer crossing of Baltimore Harbor, causing the bridge to collapse into the Patapsco River.  *Id.* ¶¶ 12-15; LoL Action Dkt. 1, ¶¶ 6, 9-11.  Six members of a maintenance crew working on the roadway of the Francis Scott Key Bridge were killed, two others were injured, and the collapsed bridge blocked access to most of the Port of Baltimore, causing significant financial harm.  Compl. ¶¶ 15-16; *see* LoL Action Dkt. 567, ¶ 64 ("MDTA preliminarily estimated that the rebuilding project would cost at least $1.7 billion.").

### C.    The Limitation Of Liability Proceeding

On April 1, 2024, Plaintiffs initiated the LoL Action in the U.S. District Court for the District of Maryland, seeking to limit their liability for the allision under 46 U.S.C. § 30501 *et seq.*  The court ruled that the LoL Action would proceed in two phases.  LoL Action Dkt. No. 438 at 1.  In Phase One, which is currently ongoing, the court will "confine its determinations … to those necessary to resolving whether Plaintiffs are entitled to exoneration from or limitation of liability," while allowing broader discovery subject to the time constraints of the case schedule (and the Federal Rules of Civil Procedure).  LoL Action Dkt. 438 at 1, 3.

During Phase One, the court will determine the extent of Plaintiffs' responsibility.  LoL Action Dkt. 438 at 1-2.  If the court finds that Plaintiffs did not cause the allision, they will be exonerated from all liability.  *See id.*  If they caused the allision, but they meet their burden to establish that they were without "privity or knowledge"—a term of art meaning culpable participation in causing the accident through negligent acts or knowledge of unseaworthy conditions—then their liability will be limited to $43 million (the current value of the vessel).  *See*

LoL Action Dkt. 438 at 2; LoL Action Dkt. 1, ¶ 20.  If, however, Plaintiffs caused the allision and are found to have had "privity or knowledge" of the negligence or unseaworthiness, they will be liable for the damage caused by the allision, which may exceed a billion dollars.  *See* 46 U.S.C. § 30523; LoL Action Dkt. 567, ¶ 64.

On July 16, 2025, Plaintiffs attempted to effect service of two third-party subpoenas for discovery in the LoL proceeding on "Hyundai Heavy Industries Co., Ltd. c/o Registered Agent Corporation Service Company" in Harrisburg, PA 17110.  HHI moved to quash the deposition subpoena, arguing that (among other things) HHI is not subject to personal jurisdiction in Pennsylvania.  *In re Subpoena of Hyundai Heavy Indus. Co., Ltd.*, No. 2:25-mc-00051 (E.D. Pa. Aug. 22, 2025), Dkt. 1.  One week later, Plaintiffs withdrew both subpoenas, and HHI voluntarily dismissed its motion to quash.  *Id.*, Dkt. 5.

### D.    LMAA Arbitration Brought By HHI

On September 18, 2025, HHI initiated arbitral proceedings by serving a Notice of Arbitration on Plaintiffs under the London Maritime Arbitrators Association ("LMAA")'s 2021 Terms.  *See* Ex. H.  In that notice, HHI brings claims against Grace Ocean and Synergy alleging breaches of the Settlement Agreement and seeking, among other things, a declaration of no liability in connection with the claims brought by Plaintiffs in this action.  *See id.* ¶ 20.  The deadline for the parties to agree on the constitution of the tribunal is October 2, 2025.

### E.    The 2002 Pennsylvania Foreign Business Corporation Registration

Plaintiffs' assertion of personal jurisdiction, Compl. ¶ 6, appears to rest on a never-used corporate registration associated with the entity "Hyundai Heavy Industries Co., Ltd." dated 2002 and on Plaintiffs' purported service of the Complaint on that same entity through a registered agent in Pennsylvania, *see* Kim Decl. ¶¶ 21-22.  Prior to Plaintiffs' attempted service of subpoenas in the LoL Action, HHI was unaware of the existence of any corporate registration of any related

5

entity in Pennsylvania. *Id.* HHI investigated the circumstances surrounding that filing and learned the following facts. *See id.* ¶¶ 23-27.

In 2002, Yong Bae Kwon—engineering officer in the Offshore Plant Division of Hyundai Heavy Industries Co., Ltd.—signed an Application for Certificate of Authority that purported to register Hyundai Heavy Industries Co., Ltd. as a Foreign Business Corporation with the Pennsylvania Secretary of State. Kim Decl. ¶¶ 28-29. Mr. Kwon retired from full-time employment at Hyundai Heavy Industries Co., Ltd. in 2006. *Id.* ¶ 27. Mr. Kwon has no memory of signing or submitting this form and does not know why it was submitted. *Id.* ¶ 29. Mr. Kwon was not involved with any work or business related to the United States generally or to Pennsylvania specifically. *Id.*

After a diligent search, HHI has not identified any documents or information explaining why the registration form was submitted. Kim Decl. ¶ 26. Nor has it identified anyone employed at HHI who was aware of the unused registration prior to the purported service. *Id.* HHI has not, to the knowledge of anyone employed at the company or on the basis of any documentation that it has been able to locate, ever acted or put itself forward as a Pennsylvania-registered corporation (for the purposes of doing business in Pennsylvania or otherwise). *Id.* Nor has the company been able to identify any potential business or purpose for which the registration might have been filed with the Pennsylvania Secretary of State in 2002, or any business at any point thereafter that would have required such a registration. *Id.*

### F.    Hyundai Heavy Industries Co., Ltd.'s Corporate Reorganizations

Hyundai Heavy Industries Co., Ltd. has undergone significant corporate restructuring between 2002 and 2025. From 2002 to 2017, Hyundai Heavy Industries Co., Ltd. was a conglomerate housing many different lines of businesses. Kim Decl. ¶¶ 7-8. These included,

among others, shipbuilding and offshore engineering; heavy machinery and equipment; robotics; and electric and energy systems.  *Id.* ¶ 7; *see also* Ex. A § 2, ¶ 1.

In 2017, Hyundai Heavy Industries Co., Ltd. underwent a corporate reorganization. Through a demerger transaction, three new corporate entities were created, and Hyundai Heavy Industries Co., Ltd.'s businesses were divided among the consequent four separate and legally distinct corporations (including Hyundai Heavy Industries Co., Ltd.), with each corporate entity inheriting a different component of the former company's business.  Ex. A § 2, ¶ 1.  Hyundai Heavy Industries Co., Ltd.—despite inheriting the name of the former umbrella corporation—took only a part, including the shipbuilding and offshore engineering division.  *Id.*

In 2019, Hyundai Heavy Industries Co., Ltd. was divided again, separating its assets into two separate and legally distinct companies.  As a part of that transaction, the preexisting corporate entity changed its name to "Korea Shipbuilding & Offshore Engineering Co., Ltd." ("KSOE"). Ex. C § 2, ¶ 1.  A new corporation was created as a subsidiary of KSOE, and it took the name "Hyundai Heavy Industries Co., Ltd."  *Id.*  This newly incorporated Hyundai Heavy Industries Co., Ltd. (the New Company) inherited certain specified business divisions, including, as relevant here, the shipbuilding division.  *Id.* § 2, ¶¶ 1, 5.  In 2023, Hyundai Heavy Industries Co., Ltd. (the new company created in 2019) was renamed "HD Hyundai Heavy Industries Co., Ltd."  Kim Decl. ¶ 20.  The chart below summarizes the corporate restructurings described above.



## ARGUMENT

### I.    The Complaint Should Be Dismissed For Lack Of Personal Jurisdiction

A federal district court may assert personal jurisdiction over a nonresident of the forum State "to the extent permitted by the law of the forum state." *Hasson v. FullStory, Inc.*, 114 F.4th 181, 186 (3d Cir. 2024); *see Fischer v. Fed. Express Corp.*, 42 F.4th 366, 382-83 (3d Cir. 2022). Because Pennsylvania's long-arm statute provides for jurisdiction "based on the most minimum contact with th[e] Commonwealth allowed under the Constitution of the United States," 42 Pa. Cons. Stat. § 5322(b), Pennsylvania courts look to the minimum requirements for personal jurisdiction under the Due Process Clause, *see Aldossari ex rel. Aldossari v. Ripp*, 49 F.4th 236, 257 (3d Cir. 2022). The Supreme Court has "recogniz[ed] two kinds of personal jurisdiction" as consistent with due process's requirements: "general (sometimes called all-purpose) jurisdiction and specific (sometimes called case-linked) jurisdiction." *Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, 592 U.S. 351, 358 (2021). Here, there is neither.

### A.    This Court Lacks General And Specific Personal Jurisdiction Over HHI

A court may exercise general personal jurisdiction only when a defendant is "essentially at home" in the forum State. *Ford*, 592 U.S. at 358. Corporations are "at home" in two places: their State of incorporation and their principal place of business. *Id.* at 358-59. For HHI, Pennsylvania is neither. *See* Kim Decl. ¶¶ 3, 5.[3]

---

[3]    On a Rule 12(b)(2) motion to dismiss for lack of personal jurisdiction, a court may consider evidence submitted by the defendant. *See, e.g.*, *Dorr v. GCT Glob. Container Terminals Inc.*, 2025 WL 560627, at *1 (3d Cir. Feb. 20, 2025); *Barth v. Walt Disney Parks & Resorts U.S., Inc.*, 206 F. Supp. 3d 1026, 1030 (E.D. Pa. 2016), *aff'd*, 697 F. App'x 119 (3d Cir. 2017); *Skidmore v. Led Zeppelin*, 106 F. Supp. 3d 581, 587 (E.D. Pa. 2015). "The burden of demonstrating the facts that establish personal jurisdiction falls on the plaintiff, and once a defendant has raised a jurisdictional defense, the plaintiff must prove by affidavits or other competent evidence that jurisdiction is proper." *Metcalfe v. Renaissance Marine, Inc.*, 566 F.3d 324, 330 (3d Cir. 2009) (cleaned up); *accord Pearce v. Mizuho Bank, Ltd.*, 2018 WL 4094812, at *3 (E.D. Pa. Aug. 27, 2018).

To be subject to specific personal jurisdiction, a defendant "must take some act by which it purposefully avails itself of the privilege of conducting activities within the forum State." *Ford*, 592 U.S. at 359 (cleaned up). In addition, the assertion of jurisdiction "must arise out of or relate to the defendant's contacts with the forum." *Id.* (cleaned up). This test is not satisfied here. The M/V *Dali* was constructed in South Korea and sold to a buyer in the Marshall Islands; it was then purchased by one Singaporean entity and operated by a different Singaporean entity. Kim Decl. ¶¶ 3, 5, 34-37; Compl. ¶¶ 2-3, 5. The vessel came to the United States without any involvement of HHI, solely as a result of how the vessel's owner and operator have conducted their businesses. Kim Decl. ¶ 40. HHI had nothing to do with the vessel's travels—it was not informed of the M/V *Dali*'s visits to U.S. ports or U.S. waters and had no ability to control or direct the M/V *Dali*'s operations, routes, or destinations, and derived no benefit from the vessel's trips to the U.S. *Id.* To the extent Plaintiffs seek to premise jurisdiction on the allision, an event in which HHI played no role, that incident occurred in Maryland, not in Pennsylvania.

On these facts, HHI cannot be said to have purposefully directed any activities toward Pennsylvania that establish personal jurisdiction. *Cf. El Paso Prod. GOM v. Smith*, 2005 WL 167588, at *4-5 (E.D. La. Jan. 25, 2005) (finding specific personal jurisdiction in Louisiana over defendants, who were owner and operator of a tug involved in allision, where the allision occurred in Louisiana, defendants had brought the tug to Louisiana in preparation for its voyage, defendants' other vessels made several port calls a year to Louisiana, defendants' vessels made crew changes in Louisiana, defendants entered into contracts with Louisiana entities, and defendants provided goods and services to Louisiana entities); *In re Libel & Petition of Gemini Navigation, S.A.*, 1996 WL 544236, at *4 (S.D. Tex. Mar. 1, 1996) (exercising personal jurisdiction over operator of vessel involved in allision was "in keeping with our notions of fair play" where operator "ha[d]

9

attempted to conduct a major shipping business in the United States, much of it conducted in Texas" by "continuously and systematically shipping grain and other goods from Texas ports").

**B.    HHI Has Not Consented To Personal Jurisdiction In Pennsylvania**

Plaintiffs seek to establish personal jurisdiction through HHI's purported consent, *see* Compl. ¶ 6; this effort is unsuccessful. Corporations may—in certain circumstances—consent to personal jurisdiction. *Mallory v. Norfolk S. Ry. Co.*, 600 U.S. 122, 146 n.11 (2023) (plurality opinion); *id.* at 152 (Alito, J., concurring in part and concurring in the judgment). One way to obtain such consent is through state laws requiring that foreign (*i.e.*, out-of-state) companies agree to be subject to suit in state courts as part of registering to do business in the state. *Id.* at 130 (plurality opinion). Pennsylvania has one of the broadest jurisdiction-by-registration statutes. *Id.* at 127, 130; 42 Pa. Cons. Stat. § 5301(a)(2)(i), (b). Plaintiffs point to the fact that a predecessor entity to HHI registered in Pennsylvania as a Foreign Business Corporation in 2002 as evidence that HHI has consented to jurisdiction. The Court should reject this argument.

A 23-year-old never-used registration by a predecessor entity, unaccompanied by evidence of any actual business in Pennsylvania, is insufficient to establish HHI's consent to personal jurisdiction for the purposes of a 2025 lawsuit based entirely on events that occurred outside Pennsylvania. Assertions of jurisdiction based on registration statutes must still comport with principles of "fair play and substantial justice" in order to comply with the Due Process Clause. *See Mallory*, 600 U.S. at 143 (plurality opinion); *id.* at 153 (Alito, J., concurring in part and concurring in the judgment); *see also Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477-78 (1985) (explaining that "the concept of 'fair play and substantial justice' may defeat the reasonableness of jurisdiction even if" the other requisites for personal jurisdiction are satisfied). Courts decline to assert personal jurisdiction where doing so would violate these fundamental constraints. *See, e.g.*, *Amoco Egypt Oil Co. v. Leonis Navigation Co.*, 1 F.3d 848, 851-53 (9th Cir.

1993) (even if defendant in allision lawsuit had minimum contacts with Washington State, "the exercise of personal jurisdiction over [defendant] would be unreasonable" where defendant's "base of operations [wa]s in Manila," defendant "ha[d] no connections with Washington," "[t]he vessel involved in the accident was not sailing from Washington and carried no Washington cargo," and "an alternative forum for [plaintiff's] claim against [defendant] plainly exist[ed]").[4]

    *Mallory v. Norfolk Southern Railway Co.* is the Supreme Court's most recent decision addressing consent-by-registration statutes. There, the plaintiff sued his former employer, Norfolk Southern, in Pennsylvania state court, alleging that his work for the railroad caused him to develop cancer. *See* 600 U.S. at 126. Norfolk Southern sought dismissal for lack of personal jurisdiction, emphasizing that it was a Virginia corporation with Virginia headquarters, and that the plaintiff was in Ohio and Virginia while working for Norfolk Southern. *See id.* In a fractured 4-1-4 decision, five Justices rejected this argument and concluded that, on the facts of the case, Pennsylvania's exercise of personal jurisdiction was consistent with the Due Process Clause's requirement of fair play and substantial justice. *See id.* at 143, 146 n.11 (plurality opinion); *id.* at 150 (Alito, J., concurring in part and concurring in the judgment).

---

[4]    *See also Glencore Grain Rotterdam B.V. v. Shivnath Rai Harnarain Co.*, 284 F.3d 1114, 1125-26 (9th Cir. 2002) (even if defendant had minimum contacts with California, exercise of personal jurisdiction would be unreasonable where "[t]he burden on [defendant] to defend suit in California appear[ed] great, given that it [wa]s incorporated in India, own[ed] no property in the forum, and ha[d] no employees or persons authorized to act on its behalf there," and "its potential witnesses and evidence [we]re likely half a world away"; also, "[t]he underlying dispute involve[d] foreign parties concerning a contract that was executed in England, that called for rice to be delivered in India, and which provided for English arbitration in the event of a dispute"); *Fisher v. Teva PFC SRL*, 212 F. App'x 72, 77 (3d Cir. 2006) ("even if sufficient contacts existed, exercising personal jurisdiction over the defendant would be unreasonable" and contrary to "traditional notions of fair play and substantial justice" where burden on defendant was great, forum State had little interest in lawsuit, and plaintiffs did not have great interest in obtaining relief in forum State).

The four-Justice plurality opinion indicated that Pennsylvania's statute exercising personal jurisdiction over a company (there, Norfolk Southern) that registered to do business in the Commonwealth was consistent with due process. *See* 600 U.S. at 136-40 (plurality opinion). But it also emphasized that, at the relevant time:

> Norfolk Southern employed nearly 5,000 people in Pennsylvania. It maintained more than 2,400 miles of track across the Commonwealth. Its 70-acre locomotive shop there was the largest in North America. … [T]he company even proclaimed itself a proud part of "the Pennsylvania Community." By 2020, too, Norfolk Southern managed more miles of track in Pennsylvania than in any other State. And it employed more people in Pennsylvania than it did in Virginia, where its headquarters was located.

*Id.* at 143 (citations omitted). The plurality concluded by asking rhetorically, "Given all this, on what plausible account could *International Shoe*'s concerns with 'fair play and substantial justice' require a Pennsylvania court to turn aside Mr. Mallory's suit?" *Id.*; *see also id.* at 146 n.11 ("While various separate writings accompany this opinion, it should be apparent a majority of the Court today agrees that: … Exercising jurisdiction here is hardly unfair."). Conversely, the four dissenters argued that Pennsylvania's assertion of personal jurisdiction over Norfolk Southern "clearly, palpably, and plainly violate[d] the Constitution" and its due-process guarantee, and that "there is nothing reasonable about a State extracting consent in cases where it has no connection whatsoever." *Id.* at 165, 168 (Barrett, J., dissenting) (cleaned up).

Justice Alito concurred in part with the plurality opinion, providing the necessary fifth vote in favor of the Court's judgment. His position on the personal-jurisdiction issue is narrower than the plurality's position and therefore controlling. *See Marks v. United States*, 430 U.S. 188, 193 (1977) ("When a fragmented Court decides a case and no single rationale explaining the result enjoys the assent of five Justices, the holding of the Court may be viewed as that position taken by those Members who concurred in the judgments on the narrowest grounds." (cleaned up)). Justice Alito framed "[t]he sole question" before the Court as "whether the Due Process Clause of the

Fourteenth Amendment is violated when a large out-of-state corporation with substantial operations in a State complies with a registration requirement that conditions the right to do business in that State on the registrant's submission to personal jurisdiction in any suits that are brought there." *Mallory*, 600 U.S. at 150 (Alito, J., concurring in part and concurring in the judgment). On this framing—and only on this framing—Justice Alito agreed with the other members of the majority that "the answer to this question is no." *Id.*; *see also id.* at 154 ("stress[ing]" that his agreement was based on "the facts of this case").

Justice Alito placed special emphasis on the breadth and depth of Norfolk Southern's business operations in Pennsylvania, writing, "The company has extensive operations in Pennsylvania; has availed itself of the Pennsylvania courts on countless occasions; and had clear notice that Pennsylvania considered its registration as consent to general jurisdiction. Norfolk Southern's conduct and connection with [Pennsylvania] are such that [it] should reasonably anticipate being haled into court there." 600 U.S. at 153 (cleaned up). On these facts, "[r]equiring Norfolk Southern to defend against Mallory's suit in Pennsylvania," Justice Alito explained, "is not so deeply unfair that it violates the railroad's constitutional right to due process." *Id.*

The facts here bear no resemblance to *Mallory*, and the differences are dispositive. Unlike Norfolk Southern, HHI has no ongoing business in Pennsylvania, had no understanding or expectation that it could be subject to suit, and was surprised to learn that Plaintiffs believed they could assert personal jurisdiction over it from the other side of the world based on a never-used, 23-year-dormant corporate registration. HHI is incorporated under the laws of South Korea with its principal place of business in South Korea. Kim Decl. ¶ 3. It has no employees in Pennsylvania. *Id.* ¶ 5. HHI and its predecessor entities have received no revenues originating from Pennsylvania

for at least the last 10 years, and its predecessor entities have not received any revenues originating from Pennsylvania associated with any current HHI business division since at least 2002. *Id.* ¶ 31.

The only reason the registration did not lapse years ago is that, until just recently, Pennsylvania had no requirement that foreign corporations renew their registration annually (or ever) in order for the registration to remain active.[5] HHI is not aware of any actions taken by it or any predecessor entity to renew, amend, or file anything in connection with the registration. *See* Kim Decl. ¶¶ 25-26. And, across multiple corporate reorganizations, at no point did HHI or any other entity update the unused Pennsylvania registration to reflect the changes in corporate structure or entity names. Likewise, the former employee who apparently filed the registration retired from Hyundai Heavy Industries Co., Ltd. in 2006, and has no memory of filing the registration. *Id.* ¶¶ 27, 29. He never worked on any business connected to Pennsylvania during his time in the Offshore Plant Division at Hyundai Heavy Industries Co., Ltd. *Id.* ¶ 29. Unlike Norfolk Southern in *Mallory*, there is no reason to think HHI's predecessor ever needed to register in Pennsylvania in the first place. *Cf. Mallory*, 600 U.S. at 148 (Jackson, J., concurring) ("Registration is required [in Pennsylvania] when corporations seek to conduct local business in a regular, systematic, or extensive way." (cleaned up)).

If the due-process limitation requiring "fair play and substantial justice" means anything, it should prevent HHI from being haled into a Pennsylvania court to answer claims relating to a ship that was built 10 years ago in South Korea (with no outstanding warranty obligations), is

---

[5]    A recently enacted Pennsylvania statute requires foreign corporations to file annual reports in order to maintain an active registration beginning in 2025 and will administratively terminate or cancel registrations of companies that fail to register beginning in 2027. *See* 15 Pa. Cons. Stat. § 146; *Annual Reports in Pennsylvania*, Commonwealth of Pennsylvania, https://www.pa.gov/agencies/dos/programs/business/types-of-filings-and-registrations/annual-reports (last visited Sept. 22, 2025).

owned and operated by entities based in Singapore, and struck a bridge in Maryland. Simply put, HHI has "no meaningful contacts, ties, or relations" with Pennsylvania, as the Due Process Clause requires for the imposition of personal jurisdiction. *Burger King*, 471 U.S. at 471-72 (cleaned up); *accord Gen. Elec. Co. v. Deutz AG*, 270 F.3d 144, 150 (3d Cir. 2001) ("Due process shields persons from the judgments of a forum with which they have established no substantial ties or relationship."). Because asserting jurisdiction on these facts would be inconsistent with fair play and substantial justice, the Court lacks personal jurisdiction.

### C. Pennsylvania's Consent Requirement Violates The Dormant Commerce Clause

Even if this Court were to determine that applying Pennsylvania's registration statute here would not offend due process, the Complaint should be dismissed because Pennsylvania's consent-by-registration statute separately violates the dormant Commerce Clause. "Although the [Commerce] Clause is framed as a positive grant of power to Congress, [the Supreme Court] ha[s] long held that this Clause also prohibits state laws that unduly restrict interstate commerce." *Tenn. Wine & Spirits Retailers Ass'n v. Thomas*, 588 U.S. 504, 514 (2019) (cleaned up). "This negative implication, referred to as the dormant Commerce Clause, prohibits states from engaging in undue economic protectionism." *Jean-Paul Weg LLC v. Dir. of N.J. Div. of Alcoholic Beverage Control*, 133 F.4th 227, 232 (3d Cir. 2025). *Mallory* expressly left open whether Pennsylvania's statute requiring foreign corporations to consent to general jurisdiction in the Commonwealth violates the dormant Commerce Clause. *See* 600 U.S. at 127 n.3. On the facts of this case, it clearly does.

Pennsylvania's registration statute violates the dormant Commerce Clause in two ways. *First*, it violates the Clause's prohibition on laws that discriminate against out-of-state companies. Where a statute "discriminates against interstate commerce," it "is virtually *per se* invalid and will survive only if it advances a legitimate local purpose that cannot be adequately served by

15

reasonable nondiscriminatory alternatives." *Dep't of Revenue of Ky. v. Davis*, 553 U.S. 328, 338 (2008) (cleaned up). Pennsylvania's jurisdictional scheme "discriminate[s] against out-of-state companies by forcing them to increase their exposure to suits on all claims in order to access Pennsylvania's market while Pennsylvania companies generally face no reciprocal burden for expanding operations into another State." *Mallory*, 600 U.S. at 161 n.7 (Alito, J., concurring in part and concurring in the judgment); *see Bacchus Imps., Ltd. v. Dias*, 468 U.S. 263, 270 (1984) ("A finding that state legislation constitutes economic protectionism may be made on the basis of discriminatory purpose or discriminatory effect." (cleaned up)). Here, there is no "*legitimate local interest that is advanced by requiring an out-of-state company to defend a suit brought by an out-of-state plaintiff on claims wholly unconnected to the forum State*" because "a State generally does *not* have a legitimate local interest in vindicating the rights of non-residents harmed by out-of-state actors through conduct outside the State." *Mallory*, 600 U.S. at 162-63 (Alito, J., concurring in part and concurring in the judgment). Therefore, applying the consent-by-registration statute to HHI violates the dormant Commerce Clause.

*Second*, even if it did not expressly discriminate against out-of-state companies, Pennsylvania's registration statute violates the dormant Commerce Clause because "the burden imposed on [interstate] commerce is clearly excessive in relation to the putative local benefits." *Pike v. Bruce Church, Inc.*, 397 U.S. 137, 142 (1970); *see Nat'l Pork Producers Council v. Ross*, 598 U.S. 356, 403 (2023) (Kavanaugh, J., concurring in part and dissenting in part). Pennsylvania's statute "imposes a significant burden on interstate commerce by requiring a foreign corporation to defend itself with reference to all transactions, including those with no forum connection." *Mallory*, 600 U.S. at 161 (Alito, J., concurring in part and concurring in the judgment) (cleaned up). "Aside from the operational burdens it places on out-of-state companies,

Pennsylvania's scheme injects intolerable unpredictability into doing business across state borders." *Id.* And as there is "no legitimate local interest served, there is nothing to be weighed to sustain the law," let alone sufficient "local benefits" to "overcome the serious burdens on interstate commerce." *Id.* at 163 (cleaned up).

## II.    The Complaint Should Be Dismissed Under *Forum Non Conveniens*

Because Plaintiffs and HHI have agreed to a valid forum-selection clause,[6] the Complaint should be dismissed under the doctrine of *forum non conveniens*, under which "a federal district court may dismiss an action on the ground that a court abroad is the more appropriate and convenient forum for adjudicating the controversy." *Sinochem Int'l Co. v. Malay. Int'l Shipping Corp.*, 549 U.S. 422, 425 (2007). "A district court … may dispose of an action by a *forum non conveniens* dismissal, bypassing questions of subject-matter and personal jurisdiction, when considerations of convenience, fairness, and judicial economy so warrant." *Id.* at 432. And "where subject-matter or personal jurisdiction is difficult to determine, and *forum non conveniens* considerations weigh heavily in favor of dismissal, the court properly takes the less burdensome course." *Id.* at 436. Given the clarity of the *forum non conveniens* question, the Court would properly proceed directly to it.

When there is "a forum-selection clause pointing to a state or foreign forum," the correct method for enforcing the clause "is through the doctrine of *forum non conveniens*." *Atl. Marine Constr. Co. v. U.S. Dist. Ct. for W. Dist. of Tex.*, 571 U.S. 49, 60 (2013). Typically, a court considering a *forum non conveniens* motion "must evaluate both the convenience of the parties

---

[6]    In considering this ground for dismissal, the Court may consider evidence outside the Complaint. *Levien v. hibu plc*, 475 F. Supp. 3d 429, 436 n.4 (E.D. Pa. 2020) ("A motion to dismiss based on *forum non conveniens* 'may be resolved on affidavits presented by the parties.'" (quoting *Van Cauwenberghe v. Biard*, 486 U.S. 517, 529 (1988))).

and various public-interest considerations." *Id.* at 62. "The calculus changes, however, when the parties' contract contains a valid forum-selection clause, which represents the parties' agreement as to the most proper forum." *Id.* at 63 (cleaned up). "[A] valid forum-selection clause should be given controlling weight in all but the most exceptional cases." *Id.* (cleaned up).

HHI and Plaintiffs agreed to a forum-selection provision in the Settlement Agreement, which incorporated in full the Arbitration Clause from the Shipbuilding Agreement. Ex. E art. XIV; Ex. G ¶ 5 ("The governing law and arbitration clauses contained in the Shipbuilding Contract shall also apply to this Settlement Agreement"). "[A]n arbitration agreement is a specialized kind of forum-selection clause that posits not only the situs of suit but also the procedure to be used in resolving the dispute." *Viking River Cruises, Inc. v. Moriana*, 596 U.S. 639, 653 (2022) (cleaned up). That is precisely what the parties agreed to here, where the Arbitration Clause reflects an agreement between Plaintiffs and HHI, *see also infra* § III.A, that mandates that disputes be resolved in the chosen forum: "any dispute or difference … *shall* be referred to arbitration in London, England," Ex. E art. XIV, § 1 (emphasis added); *see IAC/InterActiveCorp v. Roston*, 44 F.4th 635, 643 (7th Cir. 2022) (forum-selection clauses "specifying that disputes under the contract 'shall' or 'will' be litigated in a specific venue or forum" are mandatory). Plaintiffs' claims arising out of HHI's construction of the M/V *Dali* fall squarely within the Arbitration Clause's plain language. Ex. E art. XIV, § 1; *see also infra* § III.B.

Both private and public factors likewise favor enforcement of this forum-selection clause. Because the parties have agreed to a forum in a bargained-for agreement, the Court "must deem the private-interest factors to weigh entirely in favor of the preselected forum." *Atl. Marine*, 571 U.S. at 64. The public-interest factors—which "may include the administrative difficulties flowing from court congestion; the local interest in having localized controversies decided at home; and

the interest in having the trial of a diversity case in a forum that is at home with the law"—also support dismissal. *Id.* at 62 n.6 (cleaned up). This case is not a "localized controvers[y]" in the Eastern District of Pennsylvania. *Id.* All of Plaintiffs' claims arise out of an allision in Maryland involving a vessel—built in South Korea by a South Korean corporation, registered in Singapore, owned by a Singaporean corporation, and managed by another Singaporean corporation—traveling from Maryland to China by way of Sri Lanka. Compl. ¶¶ 2-5, 10; Kim Decl. ¶¶ 3, 5, 34-37. Nor is this a "diversity case in a forum that is at home with the law" or one that implicates "administrative difficulties flowing from court congestion." *Atl. Marine*, 571 U.S. at 62 n.6. Instead, it is an admiralty action where no claim is governed by Pennsylvania law and where dismissal would raise no administrative difficulties. *See generally Amazon Produce Network, LLC v. NYK Line*, 143 F. Supp. 3d 252, 257 (E.D. Pa. 2015) (dismissing maritime action under *forum non conveniens*, and refusing to "override the bargain made by these sophisticated parties for adjudication of their disputes in a Japanese forum under Japanese law"), *aff'd*, 679 F. App'x 166 (3d Cir. 2017). This case is likewise not "exceptional" in the relevant sense. *Atl. Marine*, 571 U.S. at 60; *cf. M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 15 (1972) (forum-selection clause should be enforced unless resisting party can "clearly show that enforcement would be unreasonable and unjust, or that the clause [i]s invalid for such reasons as fraud or overreaching"). The parties' forum-selection clause thus provides a compelling basis for dismissal on *forum non conveniens* grounds. *See Spin Master Ltd. v. Ent. Bus., LLC*, 2024 WL 3850796, at *5 (E.D. Pa. Aug. 15, 2024) ("Because transfer is not available when a forum selection clause specifies a non-federal forum, dismissal is the sole option.").

Even if there were not a binding forum-selection clause, *forum non conveniens* dismissal still would be warranted in favor of South Korea's courts. *See Piper Aircraft Co. v. Reyno*, 454

U.S. 235, 241 n.6 (1981) (listing public- and private-interest factors).  While this Court lacks personal jurisdiction over HHI, *see supra* § I, there would be no such problem if Plaintiffs sued HHI in South Korea, an adequate alternative forum.  Also, many (if not all) of the relevant "witnesses" and other "sources of proof" are in South Korea and Singapore (the parties' home countries), half a world away—so trying the case here would be "cost[lier]" and create numerous "practical problems." *Piper Aircraft*, 454 U.S. at 241 n.6; *see* Kim Decl. ¶ 5.  As explained above, the public-interest factors do not favor this forum.  And, finally, Plaintiffs' choice of forum should receive little deference here because Plaintiffs filed suit outside of their home forum, *see Piper Aircraft*, 454 U.S. at 255-56, and "none of the operative facts of the action occur[red] in th[is] forum," *Sanders v. Ethicon, Inc.*, 2015 WL 1781572, at *2 (E.D. Pa. Apr. 16, 2015).

## III.    Plaintiffs' Claims Should Be Sent To Arbitration

If this Court both finds personal jurisdiction and declines to dismiss under *forum non conveniens*, it is nonetheless the wrong forum to decide Plaintiffs' claims, which all belong in arbitration.[7]  Without conceding personal jurisdiction, HHI therefore requests a stay of these

---

[7]    "If the motion [to compel arbitration] can be decided based on the face of a complaint, and documents relied upon in the complaint, a motion-to-dismiss standard should be used; otherwise, the summary judgment standard should be applied." *Adler v. Gruma Corp.*, 135 F.4th 55, 63 (3d Cir. 2025) (cleaned up).  Perhaps intentionally, the Complaint does not attach the relevant contracts.  Nevertheless, the Court can consider the contracts because they are "integral to … the complaint" and "undisputedly authentic." *Mator v. Wesco Distrib., Inc.*, 102 F.4th 172, 178 (3d Cir. 2024); *see also infra* § IV.

Alternatively, if it chooses, the Court may assess this portion of HHI's motion under the standard for summary judgment. *See Adler*, 135 F.4th at 63.  In their opposition to this motion, Plaintiffs will have "a reasonable opportunity to present all material that is pertinent to the motion," Fed. R. Civ. P. 12(d), and no discovery is necessary because the Arbitration Clause's existence and validity cannot seriously be questioned, *see Young v. Experian Info. Sols., Inc.*, 119 F.4th 314, 320 (3d Cir. 2024) (no discovery needed when "there is no factual dispute about the existence of the agreement to arbitrate"); *see also Cornelius v. CVS Pharm. Inc.*, 133 F.4th 240, 249 n.11 (3d Cir. 2025) (any discovery on a motion to compel arbitration "should be limited to the narrow issue concerning the existence and validity of the arbitration agreement" (cleaned up)).

proceedings under 9 U.S.C. § 3 pending the resolution of the already-initiated arbitration.  *See Smith v. Spizzirri*, 601 U.S. 472, 478 (2024).[8]

The Federal Arbitration Act (the "FAA") "establishes a liberal federal policy favoring arbitration agreements."  *Epic Sys. Corp. v. Lewis*, 584 U.S. 497, 505 (2018) (cleaned up).  "[B]y its terms, the [FAA] leaves no place for the exercise of discretion by a district court, but instead mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed."  *KPMG LLP v. Cocchi*, 565 U.S. 18, 22 (2011) (per curiam) (cleaned up); *see* 9 U.S.C. §§ 3-4; *see also id.* §§ 2, 202, 206.  A motion to compel arbitration generally gives rise to "two threshold questions.  First, is there a valid arbitration agreement between the parties?  And second, does the dispute fall within the language of that agreement?"  *Abdurahman v. Prospect CCMC LLC*, 42 F.4th 156, 159 (3d Cir. 2022) (cleaned up).

### A.    The Parties Have A Valid Arbitration Agreement

The first question—implicating "the formation or existence of an arbitration agreement"— must be decided by a court.  *Field Intel. Inc. v. Xylem Dewatering Sols. Inc.*, 49 F.4th 351, 357 (3d Cir. 2022).  Here, the Arbitration Clause—as incorporated into the Settlement Agreement—is a valid arbitration agreement between HHI, Grace Ocean, and Synergy.  HHI, Grace Ocean, and Synergy each signed the Settlement Agreement.  Ex. G at 2.  In doing so, HHI, Grace Ocean, and Synergy plainly manifested their intent to be bound by the Settlement Agreement's terms— including the Arbitration Clause, which applies to "any dispute or difference … concerning … the operation or construction [of the M/V *Dali*], or any matter or thing in any way connected with [the

---

[8]    *See Smith*, 601 U.S. at 476 n.2 ("That is not to say that the court is barred from dismissing the suit if there is a separate reason to dismiss, unrelated to the fact that an issue in the case is subject to arbitration.  If, for example, the court lacks jurisdiction, § 3 is no bar to dismissing on that basis.").

Shipbuilding Contract]." Ex. E art. XIV, § 1. Thus, there is "a valid arbitration agreement between the parties." *Abdurahman*, 42 F.4th at 159.

### B.    The Parties' Arbitration Agreement Delegates Arbitrability Determinations To The Arbitrator And Covers Plaintiffs' Claims

The second question—"whether a dispute is subject to arbitration"—is often called a question of "arbitrability." *Coinbase, Inc. v. Suski*, 602 U.S. 143, 148 (2024). "The [FAA] allows parties to agree by contract that an arbitrator, rather than a court, will resolve threshold arbitrability questions as well as underlying merits disputes." *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 586 U.S. 63, 65 (2019). In other words, "parties may delegate threshold arbitrability questions to the arbitrator, so long as the parties' agreement does so by clear and unmistakable evidence." *Id.* at 69 (cleaned up). If the parties have agreed to arbitrate arbitrability, "a court possesses no power to decide the arbitrability issue." *Id.* at 68. Here, the parties clearly and unmistakably agreed to arbitrate arbitrability. Per the Arbitration Clause, "[a]ny arbitration arising hereunder shall be governed by and construed in accordance with the Arbitration Act 1996 of England … and with the rules of the London Maritime Arbitrator[]s Association." Ex. E art. XIV, § 2. In turn, the Arbitration Act 1996 states in relevant part:

> Unless otherwise agreed by the parties, the arbitral tribunal may rule on its own substantive jurisdiction, that is, as to—
> (a)    whether there is a valid arbitration agreement,
> (b)    whether the tribunal is properly constituted, and
> (c)    what matters have been submitted to arbitration in accordance with the arbitration agreement.

Arbitration Act 1996, c. 23, § 30(1) (UK).[9] This provision delegates arbitrability to the arbitrator, as courts construing materially similar provisions have recognized. *See, e.g.*, *Richardson v.*

---

[9]    Under the applicable LMAA rules, "the arbitral proceedings and the rights and obligations of the parties in connection therewith shall be in all respects governed by the [Arbitration] Act

*Coverall N. Am., Inc.*, 811 F. App'x 100, 103-04 (3d Cir. 2020) (contract's adoption of AAA Commercial Arbitration Rules—including rule providing that the arbitrator "shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope, or validity of the arbitration agreement or to the arbitrability of any claim or counterclaim"—was clear and unmistakable evidence that the parties delegated arbitrability to arbitrator).  Thus, nothing remains for this Court to do except send this case to arbitration.

Even if the parties had not agreed to delegate arbitrability to the arbitrator, leaving this Court to address the issue, Plaintiffs' claims fall comfortably within the Arbitration Clause's scope. The FAA "requires courts to enforce [arbitration agreements] according to their terms."  *Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 67 (2010).  "[A]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration," *Chassen v. Fid. Nat'l Fin., Inc.*, 836 F.3d 291, 295 (3d Cir. 2016), especially "where the arbitration clause is broad," *Brayman Constr. Corp. v. Home Ins. Co.*, 319 F.3d 622, 625 (3d Cir. 2003) (cleaned up).

Because the Arbitration Clause is unambiguous, it should be given its plain meaning.  *See Shaver v. Siemens Corp.*, 670 F.3d 462, 496 (3d Cir. 2012).  That plain meaning is broad: the Arbitration Clause requires arbitration of "any dispute or difference … concerning any matter or thing [contained in the Shipbuilding Contract], or the operation or construction thereof, or any matter or thing in any way connected with [the Shipbuilding Contract] or the rights, duties or liabilities of either party under or in connection with [the Shipbuilding Contract]." Ex. E, art. XIV § 1.  As used here, "concerning" means "[i]n reference or relation to; regarding, about." *Concerning*, Oxford English Dictionary, https://doi.org/10.1093/OED/1729801011 (last visited

[1996]."  London Mar. Arbs. Ass'n, *The LMAA Terms 2021* ¶ 7(a), https://lmaa.london/wp-content/uploads/2022/11/LMAA-Terms-2021.pdf (last visited Sept. 22, 2025).

Sept. 22, 2025).  All of Plaintiffs' claims concern both (a) "the operation or construction" of "any matter or thing" contained in the Shipbuilding Contract—namely, the M/V *Dali*, and (b) a "matter or thing in any way connected with" the Shipbuilding Contract—again, the M/V *Dali*.  Likewise, Plaintiffs' claims concern "the rights, duties or liabilities of either party under or in connection with" the Shipbuilding Contract (including those addressed by the Settlement Agreement, *see infra* § IV).

## IV.    Plaintiffs Have Released Their Claims

Given the jurisdictional, forum, and arbitration arguments set out above, this Court has no warrant to address Plaintiffs' claims on the pleadings.  Nonetheless, in the event the Court rejects HHI's threshold arguments, it should dismiss the Complaint because Plaintiffs' claims were squarely released by the parties' Settlement Agreement and so are implausibly alleged here.

A release is often an affirmative defense, but a court may dismiss a complaint under Rule 12 based on undisputedly authentic documents that are integral to the complaint.  *See Lupian v. Joseph Cory Holdings LLC*, 905 F.3d 127, 130 (3d Cir. 2018).  "The rationale underlying [the integral-documents rule] is that the primary problem raised by looking to documents outside the complaint—lack of notice to the plaintiff—is dissipated where plaintiff has actual notice and has relied upon these documents in framing the complaint."  *Burlington Coat Factory*, 114 F.3d at 1426 (cleaned up).  Here, "[t]he authenticity of the Settlement Agreement is not disputed, [nor would] extrinsic evidence … inform the Court's interpretation of it.  Thus, [HHI's] argument presents an unfettered question of law that can be resolved on a motion to dismiss and should not be deferred."  *Doe 1 v. Deutsche Bank Aktiengesellschaft*, 671 F. Supp. 3d 387, 401 (S.D.N.Y. 2023).  Nor can Plaintiffs claim lack of notice when they both signed the Settlement Agreement

and brought claims based on the purchase of the M/V *Dali* without mentioning the contracts that governed or resulted from that purchase. *Cf.* Compl. ¶¶ 2, 3, 9, 60-61, 63, 66-67, 77.[10]

Under Paragraph 1 of the Settlement Agreement, HHI paid $170,800 to Plaintiffs "in full and final settlement of any and all claims and disputes … under the Shipbuilding Contract." Ex. G ¶ 1. In Paragraph 2, Plaintiffs "release[d] and forever discharge[d]" HHI "from any and all obligations and liabilities arising in relation to the matters set out in paragraph 1." *Id.* ¶ 2. The Settlement Agreement thus released all the claims in the Complaint. *See Erie Telecomms., Inc. v. City of Erie*, 853 F.2d 1084, 1098 (3d Cir. 1988) (release of "any and all claims" was "clearly … broad in scope" and had an "unlimited reach" that "swe[pt] within its compass every cause of action asserted by [plaintiff] in its complaint"); *In re Verso Corp.*, 806 F. App'x 130, 132-33 (3d Cir. 2020) (release of "any and all" claims was "broad and unambiguous waiver"); *see also John Wyeth & Bro. v. CIGNA Int'l Corp.*, 119 F.3d 1070, 1074 (3d Cir. 1997) (Alito, J.) ("The ordinary meaning of the phrase 'arising in relation to' is simple. To say that a dispute arises in relation to [a contract] is to say that the origin of the dispute is related to that agreement, *i.e.*, that the origin of the dispute has some logical or causal connection to the [contract]." (cleaned up)). Therefore, if the Court reaches the merits, it should dismiss Plaintiffs' claims with prejudice.

## CONCLUSION

This case should be dismissed or, alternatively, stayed pending arbitration. Leave to amend should be denied because it would be futile. *See In re Avena*, 92 F.4th 473, 481 (3d Cir. 2024).

---

[10]    Alternatively, the Court may convert this portion of HHI's motion into a motion for summary judgment. *See* Fed. R. Civ. P. 12(d). Since Plaintiffs cannot seriously contest the authenticity or validity of the Settlement Agreement they both signed, no discovery is necessary. *See Haskins v. Point Towing Co.*, 421 F.2d 532, 536 (3d Cir. 1970) ("[T]he construction of a contract is a question of law for the court to decide, and when clear and unambiguous language is at issue, it is reversible error to leave such questions for the jury." (citation omitted)).

Dated: September 22, 2025

Respectfully submitted,

/s/ Alan Schoenfeld
Alan Schoenfeld (*pro hac vice*)
Howard M. Shapiro (*pro hac vice*)
WILMER CUTLER PICKERING
  HALE AND DORR LLP
7 World Trade Center
250 Greenwich Street
New York, NY 10007
Telephone: (212) 230-8800
Alan.Schoenfeld@wilmerhale.com
Howard.Shapiro@wilmerhale.com

George P. Varghese (Pennsylvania Bar No. 94329)
Andrés O'Laughlin (*pro hac vice*)
Jacob Tuttle Newman (*pro hac vice*)
WILMER CUTLER PICKERING
  HALE AND DORR LLP
60 State Street
Boston, MA 02109
Telephone: (617) 526-6000
George.Varghese@wilmerhale.com
Andy.OLaughlin@wilmerhale,com
Jacob.TuttleNewman@wilmerhale.com

Christopher Davies (*pro hac vice*)
WILMER CUTLER PICKERING
  HALE AND DORR LLP
2100 Pennsylvania Avenue NW
Washington, DC 20037
Telephone: (202) 663-6000
Christopher.Davies@wilmerhale.com

*Attorneys for HD Hyundai Heavy Industries Co., Ltd.*