# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |
|---|---|
| GRACE OCEAN PRIVATE LIMITED, as Owner of the M/V DALI, and SYNERGY MARINE PTE LTD, as Manager of the M/V DALI <br><br> v. <br><br> Hyundai Heavy Industries Co., Ltd. | Case No. 2:25-cv-04374-KNS |

**<u>GRACE OCEAN PRIVATE LIMITED AND SYNERGY MARINE PTE LTD.'S RESPONSE IN OPPOSITION TO HYUNDAI HEAVY INDUSTRIES, CO., LTD.'S MOTION TO DISMISS OR, IN THE ALTERNATIVE, STAY PENDING ARBITRATION</u>**

# TABLE OF CONTENTS

**Page**

RELEVANT FACTUAL BACKGROUND .................................................................................. 2

    **A.**    HHI Registered as a Pennsylvania Foreign Business Corporation ......................... 2

    **B.**    HHI Now is the Same Company that Registered Then ........................................... 3

    **C.**    HHI's Contacts With Pennsylvania Are Not As "Tenuous" As it Suggests ............ 4

ARGUMENT .............................................................................................................................. 5

    I.    HHI CONSENTED TO PERSONAL JURISDICTION .......................................... 5

    II.    THE DORMANT COMMERCE CLAUSE CAN STAY IN BED ...................... 10

    III.    NO BASIS FOR ARBITRATION ON ANY OF PLAINTIFFS' CLAIMS ......... 15

    IV.    *FORUM NON CONVENIENS* INADEQUATELY RAISED ............................. 23

CONCLUSION ........................................................................................................................ 25

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Allstate Ins. Co. v. Electrolux Home Prods.*,
No. 5:18-CV-00699, 2018 WL 3707377 (E.D. Pa. Aug. 3, 2018) ...........................................8

*Atchison, T. & S. F. R. Co. v. Wells*,
265 U.S. 101 (1924).....................................................................................................................14

*Bane v. Netlink, Inc.*,
925 F.2d 637 (3d Cir. 1991).........................................................................................................7, 8

*Bors v. Johnson & Johnson*,
208 F.Supp.3d 648 (E.D. Pa. 2016) ...........................................................................................4, 6

*Brennan v. Opus Bank*,
796 F.3d 1125 (9th Cir. 2015) ...................................................................................................19, 20

*Bruno v. Roundhouse Cycles Inc.*,
750 F. Supp. 3d 501 (W.D. Pa. 2024).........................................................................................23

*Burger King Corp. v. Rudzewicz*,
471 U.S. 462 (1985)......................................................................................................................5, 6

*Burke v. Quartey*,
969 F. Supp. 921 (D.N.J. 1997) ..................................................................................................25

*C&A Carbone, Inc. v. Town of Clarkstown, N.Y.*,
511 U.S. 383 (1994)......................................................................................................................11

*Cape Flattery Ltd. V. Titan Mar., LLC*,
647 F.3d 914 (9th Cir. 2011) ......................................................................................................19, 20

*Cherry Hill Vineyard, LLC v. Baldacci*,
505 F.3d 28 (1st Cir. 2007).........................................................................................................12

*Cloverland–Green Spring Dairies, Inc. v. Pa. Milk Mktg. Bd.*,
462 F.3d 249 (3d Cir. 2006).........................................................................................................13

*Cont. Materials, Inc. v. Veer Plastics*,
2023 WL 2795345 (E.D. Pa. 2023) ............................................................................................20

*Crawford Professional Drugs v. CVS Caremark Corp.*,
748 F.3d 249 (5th Cir 2014).......................................................................................................20

*Daimler AG v. Bauman*,
    571 U.S. 117 (2014) ................................................................................................2

*Denver & R. G. W. R. Co. v. Terte*,
    284 U.S. 284 (1932) ..............................................................................................14

*Dep't of Revenue of Ky. v. Davis*,
    553 U.S. 328 (2008) ..............................................................................................11

*East River S.S. Corp. v. Transamerica Delaval, Inc.*,
    476 U.S. 858 (1986) ..............................................................................................22

*Elec. Realty Assocs., L.P. v. Vaughan Real Est., Inc.*,
    897 F. Supp. 521 (D. Kan. 1995) ............................................................................6

*Exxon Corp. v. Governor of Maryland*,
    437 U.S. 117 (1978) ..............................................................................................12

*Filer v. Foster Wheeler LLC*,
    994 F. Supp. 2d 679 (E.D. Pa. 2014) ..............................................................13, 25

*First Liberty Inv. Grp. v. Nicholsberg*,
    145 F.3d 647 (3d Cir. 1998) ..................................................................................17

*Frederico v. Charterers Mut. Assur. Ass'n Ltd*,
    158 F. Supp 2d 565 (E.D. Pa. 2001) ....................................................................20

*Fuld v. Palestine Liberation Org.*,
    101 F.4th 190 (2d Cir. 2024) ..................................................................................9

*Gemini Ins. Co. v. Certain Underwriters at Lloyd's*,
    Civ. Action No. H-17-1044, 2017 WL 1354149 (S.D. Tex. 2017) ........................20

*Gen. Elec. Co. v. Deutz AG*,
    270 F.3d 144 (3d Cir. 2001) ..................................................................................17

*Glencore AG v. Alexander Finance Inc.*,
    2001 WL 179871 (E.D. Pa. 2001) ........................................................................20

*Gorton v. Air & Liquid Sys. Corp.*,
    303 F. Supp. 3d 278 (M.D. Pa. 2018) ....................................................................6

*Granholm v. Heald*,
    544 U.S. 460 (2005) ..............................................................................................13

*Harris v. Green Tree Fin. Corp.*,
    183 F.3d 173 (3d Cir. 1999) ..................................................................................18

*Hasson v. FullStory, Inc.*,
    114 F.4th 181 (3d Cir. 2024) ..................................................................6

*Healy v. Beer Inst., Inc.*,
    491 U.S. 324 (1989)...............................................................................15

*Henry Schein, Inc. v. Archer & White Sales, Inc.*,
    586 U.S. 63 (2019).................................................................................18

*Hong Kong Cont. Trade Co. Ltd. V. Nat. Balance Pet Foods, Inc.*,
    2023 WL 2664246 (C.D. Cal. 2023)......................................................20

*Hughes v. Oklahoma*,
    441 U.S. 322 (1979)...............................................................................11

*Ins. Corp. of Ireland v. Compagnie des Bauxites de Guinee*,
    456 U.S. 694 (1982).................................................................................2

*Int'l Shoe Co. v. Washington*,
    326 U.S. 310 (1945).................................................................................2

*Jean-Paul Weg LLC v. Dir. of N.J. Div. of Alcoholic Beverage Control*,
    133 F.4th 227 (3d Cir. 2025) ................................................................11

*John Wyeth & Bro. Ltd. v. CIGNA Int'l Corp.*,
    119 F.3d 1070 (3d Cir. 1997)................................................................25

*Kleinsmith v. Shurtleff*,
    571 F.3d 1033 (10th Cir. 2009) ............................................................12

*Lacey v. Cessna Aircraft Co.*,
    932 F.2d 170 (3d Cir. 1991)..............................................................24, 25

*Mallory v. Norfolk S. Ry. Co.*,
    600 U.S. 122 (2023)......................................................................... *passim*

*Manasse v. Prudential-Bache Secs.*,
    840 F. Supp. 42 (W.D. Pa. 1993)..........................................................19

*Maryland v. Wilson*,
    519 U.S. 408 (1997)...............................................................................11

*Michigan Cent. R. Co. v. Mix*,
    278 U.S. 492 (1929)...............................................................................14

*Moskovic v. City of New Buffalo*,
    638 F. Supp. 3d 770 (W.D. Mich. 2022) ..............................................15

*Nat'l Pork Producers Council v. Ross*,
    598 U.S. 356 (2023)................................................................................13, 15

*Opalinski v. Robert Half Int'l Inc.*,
    761 F.3d 326 (3d Cir. 2014), *cert. denied*, 135 S.Ct. 1530 (2015).........................18

*Oregon Waste Sys., Inc. v. Dep't of Env't Quality of State of Or.*,
    511 U.S. 93 (1994).................................................................................13

*Penn. Fire Ins. Co. of Phila. v. Gold Issue Min. & Mill. Co.*,
    243 U.S. 93 (1917)........................................................................7, 8, 9, 10

*Petrobras America, Inc. v. Vicinay Cadenas, S.A.*,
    921 F. Supp. 2d 685 (S.D. Tex. 2013) ...............................................23

*Pharm. Rsch. & Mfrs. of Am. v. Concannon*,
    249 F.3d 66 (1st Cir. 2001), aff'd, *Pharm. Rsch. & Mfrs. of Am. v. Walsh*, 538
    U.S. 644 (2003).....................................................................................15

*Pike v. Bruce Church, Inc.*,
    397 U.S. 137 (1970)...............................................................................11

*Rhoads Indus., Inc. v. Shoreline Found., Inc.*,
    No. CV 15-921,2022................................................................................21

*Richardson v. Coverall North America, Inc.*,
    811 F. Appx. 100 (3d Cir. 2020)...........................................................20

*Rodriguez de Quijas v. Shearson/Am. Exp., Inc.*,
    490 U.S. 477 (1989)................................................................................8

*RX Returns, Inc. v. PDI Enters., Inc.*,
    No. CIV. A. 97-1855, 1997 WL 330360 (E.D. Pa. June 6, 1997)...........................8

*Scherk v. Alberto–Culver Co.*,
    417 U.S. 506 (1974)...............................................................................18

*Shell Petroleum, Inc. v. U.S.*,
    182 F.3d 212 (3d Cir. 1999)...................................................................25

*Tenn. Wine & Spirits Retailers Ass'n v. Thomas*,
    588 U.S. 504 (2019)...............................................................................11

*U.S. v. Lopez*,
    514 U.S. 549 (1995)...............................................................................14

**Statutes**

42 Pa. Cons. Stat.
  § 5301......................................................................................................................2, 6

9 U.S.C. §§ 201–208 (Federal Arbitration Act)............................................................18

## INTRODUCTION

In July 2014, Defendant Hyundai Heavy Industries, Co., Ltd.'s ("HHI") began building the M/V DALI (the "Vessel") and, nine months later, HHI delivered the Vessel to its original purchaser, Stellar Marine, LLC ("Stellar"). In 2016, Stellar sold the Vessel to Grace Ocean Private Limited ("Grace Ocean"), which hired Synergy Marine Pte Ltd ("Synergy") (collectively "Plaintiffs") to manage and operate the Vessel.

Unknown and unknowable to either Grace Ocean or Synergy, the Vessel was designed and built by HHI with fatal flaws in the Vessel's electrical system. A single wire—out of thousands—that was part of an electrical circuit on the Vessel was designed, built and/or manufactured by HHI such that the wire could not be fully inserted into its designated terminal block, resulting in a faulty electrical connection that allowed the circuit's voltage to fluctuate and trip a circuit breaker, causing the Vessel to unexpectedly lose power at a critical moment. With the loss of power came an immediate shutdown of the Vessel's main engine, resulting in a loss of propulsion and steering and, as a proximate cause, on March 26, 2024, the Vessel allided with the Francis Scott Key Bridge (the "Casualty").

Long before the Casualty, an HHI senior vice-president registered HHI to do business in Pennsylvania and designated an in-state registered agent. Under Pennsylvania law, registered foreign companies consent to general jurisdiction in that forum for all purposes. As such, Plaintiffs' present lawsuit against HHI was properly brought in this forum.

Despite the Supreme Court's recent and explicit holding in *Mallory v. Norfolk S. Ry. Co.*, 600 U.S. 122 (2023) that Pennsylvania's consent-to-jurisdiction statute comports with the Due Process Clause, HHI claims that this Court cannot exercise jurisdiction over it. HHI also claims that Pennsylvania's registration statute should be voided by the "Dormant Commerce Clause," but identifies zero precedent establishing the statute is discriminatory. Moreover, HHI wholly fails to meet its burden to prove a substantial burden on interstate commerce when applying the statute to HHI. In any event, the Dormant Commerce Clause is simply irrelevant when a company has consented to jurisdiction in the forum as HHI did here.

HHI contends the parties agreed to arbitrate the claims at issue but fails to acknowledge that Synergy is not even a "party" to the contract upon which it relies. Absent a binding contract,

there is no obligation to arbitrate. And while Grace Ocean is party to a settlement agreement relating to assigned warranty claims following its purchase of the Vessel, HHI is wrong that this agreement is applicable to the claims herein. HHI is also wrong that arbitrators should determine arbitrability of Plaintiffs' claims; instead, that issue must be decided by this Court.

Finally, HHI's *forum non conveniens* ("FNC") theory was premised on the faulty assumption that each of Plaintiffs' claims are subject to arbitration. Because of that wrong assumption, HHI's premise in support of its arguments lacks adequate foundation. And in any event, HHI fails to meet its FNC burden of proof.

## RELEVANT FACTUAL BACKGROUND

Plaintiffs acknowledge that the underlying Casualty giving rise to this suit did not occur in Pennsylvania and that HHI is a foreign corporation headquartered in Korea. But those facts are immaterial to whether the Court can exercise jurisdiction over HHI. Personal jurisdiction here is not based on incident-related or minimum-contacts needed for specific jurisdiction under *Int'l Shoe Co. v. Washington*, 326 U.S. 310 (1945), or on HHI's pervasive forum-related contacts for general jurisdiction as refined in *Daimler AG v. Bauman*, 571 U.S. 117 (2014). As federal courts consistently recognize, there are multiple other bases by which courts may properly exercise jurisdiction over a foreign party.

### A.    HHI Registered as a Pennsylvania Foreign Business Corporation

Here, the Court is confronted with a case involving jurisdiction by consent (*i.e.*, another type of waiver),[1] as established by Pennsylvania statute. The only relevant facts go to whether or not HHI performed acts bringing it within the scope of the applicable law – namely, did HHI register as a foreign business in Pennsylvania and thus consent to jurisdiction in this Commonwealth?

The answer to that question is an unqualified "**YES**." Indeed, HHI attached a certified copy of HHI's June 26, 2002 Application for Certificate of Authority ("Application") filed with

---

[1] *See Ins. Corp. of Ireland v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 703 n.10 (1982) (explaining that a defendant can choose to "subject [itself] to powers from which [it] may otherwise be protected.").

Pennsylvania's Bureau of Corporations to its motion. (Dkt. 37-6). That document was executed by Y.B. Kwon, a senior vice president with HHI. *Id.*

Notably, while HHI has submitted a declaration by Kyungwoon Kim, its in-house counsel, attesting that HHI cannot presently explain why, exactly, HHI chose to register as a foreign business in Pennsylvania, there is absolutely no suggestion by HHI that its Application is anything other than genuine. Mr. Kim attested that Mr. Kwon "confirmed that the signature on the 2002 registration was his signature" and that his title at the time was "roughly equivalent to Senior Vice President." Dkt. 37-2 at p. 8. While HHI claims to be unaware of its basis for filing the Application, it has not argued that Mr. Kwon acted beyond the scope of his authority by signing same. Whatever the reason may have been, HHI was apparently aware that "[r]egistration is required [in Pennsylvania] when corporations seek to conduct *local* business [and] deemed registration worthwhile and opted in." *See Mallory*, 600 U.S. at 148 (Jackson, J., concurring) (emphasis included).

## B.    HHI Now is the Same Company that Registered Then

HHI's discussion of demergers and spin-offs in the years since HHI first registered in Pennsylvania is meaningless distraction. Parsing through the explanations in Mr. Kim's declaration makes clear that HHI was and still is subject to jurisdiction as the registering entity.[2]

To be clear, HHI admitted that, when the Application was filed in 2002, HHI was, among other things, in the business of shipbuilding. Dkt. 37-2 at p. 2. When HHI finished building the Vessel in 2015, its corporate structure was unchanged, and the Pennsylvania registration was still in effect. Even in 2017, when HHI restructured to spin off three business divisions into their own, new companies, HHI was the "surviving company" – retaining both its name and shipbuilding business. *Id.* at p. 3. In 2019, HHI underwent another "demerger," where the net effect was that HHI was now owned by a holding company, but HHI still existed as a distinct company retaining its shipbuilding business. *Id.* at p. 5. Finally, in 2023, HHI added "HD" in front of "Hyundai Heavy Industries," a branding strategy that did not otherwise impact HHI's business. *Id.* at p. 6.

---

[2] Indeed, HHI admits as much by arguing that it is a party to a contract with Grace Ocean that requires arbitration of this dispute.

In other words, from 2002 to present, there is an unbroken chain from HHI as a shipbuilding company that registered to do business in Pennsylvania to HHI today (reflected in the chart below taken from HHI's brief, with added highlighting). HHI was, is, and remains a properly registered Pennsylvania foreign company. That HHI may have not have subsequently conducted business in Pennsylvania following its registration is immaterial (and is not something Plaintiffs concede) – HHI sought and obtained that authority from the Commonwealth and retained the ability to do business in the Commonwealth at its discretion for more than 20 years.



## C.    HHI's Contacts With Pennsylvania Are Not As "Tenuous" As it Suggests

Given HHI's consent to jurisdiction, the issue of HHI's "minimal" contacts is irrelevant to this inquiry. *See Bors v. Johnson & Johnson*, 208 F.Supp.3d 648, 655 (E.D. Pa. 2016). Still, Plaintiffs note that HHI's suggestion that it has had zero business in or with Pennsylvania in the intervening years appears demonstrably false even without the benefit of any jurisdictional discovery. A simple Google search revealed that HHI and Philly Shipyard, Inc., a Pennsylvania-registered entity, entered into a memorandum of understanding concerning vessel maintenance, repairs and operations in 2024.[3]

---

[3] *See* www.imarinenews.com/9121.html (last visited Oct. 20, 2025).



Further, Philly Shipyard stated that "Philly Shipyard previously partnered with HD Hyundai for design and procurement support during construction of 22 commercial product tankers from the years 2005 – 2017."[4] Accordingly, should the Court determine HHI's contacts with Pennsylvania are relevant to its analysis, Plaintiffs should be permitted jurisdictional discovery from HHI to test the factual allegations set forth in its motion papers.

## ARGUMENT

### I.    HHI CONSENTED TO PERSONAL JURISDICTION

HHI first argues that Plaintiffs' suit should be dismissed for lack of personal jurisdiction. HHI maintains that general jurisdiction cannot lie because, as a foreign corporation incorporated and based in South Korea, HHI is not "at home" here. HHI also argues that no specific jurisdiction exists because the Casualty has no connection to Pennsylvania or to HHI's contacts with Pennsylvania. Thus, HHI submits that there is no basis for personal jurisdiction in this Court. HHI is mistaken.

The requirement that a court have personal jurisdiction over a party is an individual right under the Fourteenth Amendment Due Process Clause: it "protects an individual's liberty interest in not being subject to the binding judgments of a forum with which he has established no meaningful 'contacts, ties, or relations.'" *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 471–72 (1985) (quoting *Int'l Shoe*, 326 U.S. at 319). "[T]he exercise of jurisdiction over [a party] must

---

[4] *See* www.phillyshipyard.com/hyundai-heavy-industries-sign-mou/. (Last visited Oct. 20, 2025.)

'comport with traditional notions of fair play and substantial justice' such that '[the party] should reasonably anticipate being haled into court in that forum.'" *Hasson v. FullStory, Inc*., 114 F.4th 181, 186 (3d Cir. 2024) (cleaned up; quoting *World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980)).

As such, personal jurisdiction is "a waivable right" and may be obviated by either "'express or implied consent.'" *Burger King*, 471 U.S. at 473 n.14 (quoting *Ins. Corp. of Ireland*, 456 U.S. at 703). "To the extent that parties have consented to personal jurisdiction in a certain forum, application of a forum state's long-arm statute and analysis of a party's contacts with the forum state are unnecessary." *Elec. Realty Assocs., L.P. v. Vaughan Real Est., Inc*., 897 F. Supp. 521, 523 (D. Kan. 1995). *See also Bors*, 208 F. Supp. 3d at 655 (where jurisdiction is based solely on consent, courts "need not address whether we could exercise non-consensual jurisdiction over [defendant] under principles of general or specific jurisdiction.").

Here, HHI unequivocally consented to jurisdiction by registering to do business in Pennsylvania in 2002. Why HHI chose to do so is beside the point. That choice comes with consequences.

HHI complains that "Pennsylvania has one of the broadest jurisdiction-by registration statutes." That may be, but Pennsylvania's statute is also among the most explicit with respect to informing foreign business entities the full impact of their registration.[5] Specifically, Pennsylvania notifies registrants of the effect of qualifying as a foreign corporation:

> The existence of any of the following relationships between a person and this Commonwealth shall constitute a sufficient basis of jurisdiction to enable the tribunals of this Commonwealth to exercise **general personal jurisdiction** over such person ... (2) Corporations (i) Incorporation under or **qualification as a foreign corporation** under the laws of this Commonwealth (ii) **Consent**, to the extent authorized by the consent.

42 Pa. Cons. Stat. § 5301 (emphasis added).

---

[5] *See, e.g*., *Gorton v. Air & Liquid Sys. Corp*., 303 F. Supp. 3d 278, 296 (M.D. Pa. 2018) ("Section 5301 explicitly provides that qualifying as a foreign corporation in Pennsylvania subjects the corporation to the general jurisdiction of Pennsylvania courts and was first enacted in 1978. [] Since 1978, Pennsylvania has been the only state that 'spells out the jurisdictional consequences associated with registering to do business.'" (quoting Tanya J. Monestier, *Registration Statutes, General Jurisdiction, and the Fallacy of* Consent, 36 CARDOZO L. REV. 1343, 1368 (2015)).

Consent-by-registration statues are generally constitutional under the Due Process Clause and, in the 2023 case of *Mallory v. Norfolk S. Ry. Co.*, the Supreme Court specifically considered Pennsylvania's consent-by-registration statute. The *Mallory* majority found that the matter before it fell within the scope of the earlier decided case of *Penn. Fire Ins. Co. of Phila. v. Gold Issue Min. & Mill. Co.*, 243 U.S. 93 (1917) ("*Penn. Fire*"). 600 U.S. at 134. Because the *Penn. Fire* decision (which concerned a Missouri consent-by-registration statute) had not been overruled in the intervening 100+ years since it was issued and therefore remained good law, the Pennsylvania statute in *Mallory* similarly passed constitutional muster. Notably, HHI falsely suggests in its brief that there was <u>no majority opinion</u> issued in *Mallory* – only a 4-1-4 plurality and concurrence in the result – and accordingly seeks to minimize *Mallory*'s significance. Plaintiffs will address and correct HHI's misstatements but note that, even in the absence of *Mallory* and the *Penn. Fire* decision on which *Mallory* rests, this Court would still be bound to hold HHI to its consent to the jurisdiction.

Specifically, in *Bane v. Netlink, Inc.*, 925 F.2d 637 (3d Cir. 1991), a unanimous Third Circuit panel[6] held that "Pennsylvania law explicitly states that the qualification of a foreign corporation to do business is sufficient contact to serve as the basis for the assertion of personal jurisdiction." *Id*. at 640. The panel determined that "[w]e need not decide whether authorization to do business in Pennsylvania is a "'continuous and systematic' contact ... for purposes of the dichotomy between 'general' and 'specific' jurisdiction because **such registration by a foreign corporation carries with it consent to be sued in Pennsylvania courts**." *Id*. (emphasis added). The defendant business had, by virtue of its registration, "purposefully avail[ed] itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Id*. (quoting *Burger King*, 471 U.S. at 475). Moreover, "[c]onsent is a traditional basis for assertion of jurisdiction long upheld as constitutional." *Id*. at 641. One Pennsylvania district court summarized *Bane* as follows: "Our court of appeals has flatly held that when a foreign corporation registers to do business in Pennsylvania, a court may constitutionally exercise jurisdiction over

---

[6] It bears mentioning that then Judge Alito (i.e. the author of the *Mallory* concurrence on which HHI pins much of its argument) served as a member of the unanimous *Bane* panel.

that defendant." *RX Returns, Inc. v. PDI Enters., Inc.*, No. CIV. A. 97-1855, 1997 WL 330360, at *2 (E.D. Pa. June 6, 1997).

Like the *Penn. Fire* case, *Bane* has not been overruled.[7] And even after the Supreme Court's *Daimler* decision (which some district courts concluded impliedly overruled earlier jurisdictional precedent) and before *Mallory*, federal district courts in Pennsylvania "consistently found that the Third Circuit's decision in *Bane* remains good law and that Pennsylvania's consent-by-registration statute remains a proper basis for personal jurisdiction." *Allstate Ins. Co. v. Electrolux Home Prods.*, No. 5:18-CV-00699, 2018 WL 3707377, at *4 (E.D. Pa. Aug. 3, 2018). Thus, even if *Mallory* did not exist, this Court would still be bound to apply *Bane* and hold the exercise of jurisdiction over HHI comports with constitutional due process considerations.

In raising *Mallory*, HHI asserts that the Supreme Court resolved the case "[i]n a fractured 4-1-4 decision" and claims that, because Justice Alito only concurred in the judgment, his "narrower position" on personal jurisdiction controls over "the plurality's position." In support of this assertion, HHI cites *Marks v. U.S.* for the proposition that "[w]hen a fragmented Court decides a case ***and no single rationale explaining the result enjoys the assent of five Justices***, the holding of the Court may be viewed as that position taken by those Members who concurred in the judgments on the narrowest grounds." 430 U.S. 188, 193 (1977) (emphasis added) (citation omitted).

HHI's argument is flawed at the outset, because five members of the Court ***did*** join to form a majority opinion, as demonstrated by the very first line opening the Opinion:

> Justice GORSUCH announced the judgment of the Court and **delivered the opinion of the Court with respect to Parts I and III-B**, and an opinion with respect to Parts II, III-A, and IV, in which Justice THOMAS, Justice SOTOMAYOR, and Justice JACKSON join.

*Mallory*, 600 U.S. at 124 (Emphasis added).

---

[7] The Supreme Court has counseled that lower courts should not presume a controlling decision has been implicitly overruled. *See Rodriguez de Quijas v. Shearson/Am. Exp., Inc.*, 490 U.S. 477, 484 (1989) ("If a precedent of this Court has direct application in a case, yet appears to rest on reasons rejected in some other line of decisions, the [lower court] should follow the case which directly controls, leaving to this Court the prerogative of overruling its own decisions.").

Thus, Parts I and III-B of the *Mallory* opinion were approved by a majority of the Court. Part I of the opinion was a recitation of the underlying facts and did not announce any legal reasoning or precedent, though it did frame the question that the Court was called upon to answer: "we agreed to hear this case and decide whether the Due Process Clause of the Fourteenth Amendment prohibits a State from requiring an out-of-state corporation to consent to personal jurisdiction to do business there." *Id*. at 127. Part III-B comprises the majority's controlling legal reasoning and ultimate holding: "*Pennsylvania Fire* controls this case." *Id*. at 134.[8]

Simply put, HHI's defense fails. In *Penn. Fire*, the Supreme Court ruled that a foreign corporation, which had designated an agent to receive service of process in compliance with the requirements of the applicable Missouri state registration statute, had effectively consented to the exercise of general personal jurisdiction in that state. 243 U.S. at 95. The unanimous opinion held that Missouri could constitutionally exercise general jurisdiction over the defendant foreign corporation, and that did "not deprive the defendant of due process," even though the defendant's only apparent contact with Missouri was its designation of the Missouri Superintendent of Insurance as its registered agent. *Id*. To be clear, the underlying suit in *Penn. Fire* had <u>zero</u> factual connections to Missouri. The plaintiff was an Arizona corporation suing a Pennsylvania company that had insured buildings located in Colorado. *Id*. at 94. This lack of any local connection was of no significance to the Supreme Court – indeed, the Court did not even bother to inquire into or otherwise describe what contacts the defendant might have had with Missouri. Factors going to what would later be referred to as "minimal contacts" were wholly immaterial to the case. As Justice Holmes explained:

> The defendant had executed a power of attorney that made service on the superintendent the equivalent of personal service.... If it had appointed an agent authorized in terms to receive service in such cases, there would be equally little doubt. It did appoint an agent in language that rationally might be held to go to that length. The language has been held to go to that length, and **the construction did**

---

[8] The Second Circuit has recently observed that the five justices making up the majority opinion also reached additional agreement that *International Shoe* considerations did not apply to jurisdiction by consent cases. *See, e.g.*, *Fuld v. Palestine Liberation Org.*, 101 F.4th 190, 209–10 (2d Cir. 2024) (Menashi, C.J., dissenting).

> **not deprive the defendant of due process of law even if it took the defendant by surprise**, which we have no warrant to assert....
>
> [W]hen a power actually is conferred by a document, the party executing it takes the risk of the interpretation that may be put upon it by the courts.

*Id*. at 95–96. *Penn. Fire* thus makes clear that HHI's self-professed "surprise[] to learn that Plaintiffs believed they could assert personal jurisdiction over it from the other side of the world" is of no import.

In sum, the foreign company's registration and designation of an agent for service of process in Missouri "was the defendant's voluntary act." *Id*. at 96. In light of that act, the U.S. Supreme Court agreed with the Missouri supreme court that service on the Missouri registered agent was effective against the defendant insurer for causes of action arising outside the state as well as those arising within. *Id*. at 95. The rule of *Penn. Fire* is easy – courts will give effect to consent to jurisdiction by registration.

HHI has been registered as a foreign corporation in Pennsylvania since 2002, which remains in effect to this day – *see* Ex. A. Pennsylvania's registration by consent statute was in effect for more than 20 years prior to HHI's registration, and it remained in effect as of the time that HHI was served with process in this matter. HHI is thus charged with constructive knowledge of the effect of its registration[9] – *i.e.*, consent to general jurisdiction. Moreover, HHI did, in fact, designate and maintain a registered agent for service of process (*i.e.*, Registered Agent Corporation Service Company). Plaintiffs made valid service on HHI though its agent. HHI is subject to jurisdiction in Pennsylvania via its consent to same, and that result does not run afoul of due process. And to HHI's "fair play and substantial justice" arguments, there can be no doubt that HHI "should reasonably anticipate being haled into court" in Pennsylvania.

## II.    THE DORMANT COMMERCE CLAUSE CAN STAY IN BED

HHI's next argument consists of a generalized assertion that Pennsylvania's consent-by-registration violates the Dormant Commerce Clause. But other than a few legal citations that

---

[9] *See Mallory*, 600 U.S. at 151 (Alito, J., concurring in part and concurring in the judgment) ("Norfolk Southern is a sophisticated entity, and we may 'presum[e]' that it 'acted with knowledge' of state law when it registered. [] As a result, we may also presume that by registering, it consented to all valid conditions imposed by state law." (citation omitted)).

simply serve to define the phrase "Dormant Commerce Clause" term,[10] HHI has not identified any controlling legal authority that would render Pennsylvania's statute unconstitutional. Instead, HHI's argument on this point hangs entirely on Justice Alito's partial concurrence (in which <u>no other Justice joined</u>) musing that the statute *may* fail under the commerce clause, if the statute does somehow discriminate against out of state companies or excessively burden interstate commerce. HHI's total reliance on Alito's partial concurrence falls far short of the burden HHI must meet to succeed on this constitutional question. Language "contained in a concurrence" does not "constitute[ ] binding precedent." *Maryland v. Wilson*, 519 U.S. 408, 412–13 (1997).

"The modern law of what has come to be called the Dormant Commerce Clause is driven by concern about economic protectionism, that is, regulatory measures designed to benefit in-state economic interests by burdening out-of-state competitors." *Davis*, 553 U.S. at 337–38 (internal quotation omitted). *See also C&A Carbone, Inc. v. Town of Clarkstown, N.Y.*, 511 U.S. 383, 390 (1994) ("The central rationale for the rule against discrimination is to prohibit state or municipal laws whose object is local economic protectionism[.]"). Thus, while HHI correctly asserts that states may not enact laws that discriminate against out-of-state companies, HHI is incorrect that Pennsylvania's registration statute is discriminatory. Moreover, "[t]he burden to show discrimination rests on the party challenging the validity of the statute..." *Hughes v. Oklahoma*, 441 U.S. 322, 336 (1979). Here, HHI made no effort to meet its burden.

Pennsylvania's registration statute is not facially discriminatory because the statute does not treat in-state and out-of-state companies differently. Instead, <u>Pennsylvania law treats all companies evenly and the same</u>[11] – any company that applies to do business in the state must register and consent to general jurisdiction. In-state and out-of-state companies are held to the exact same standard. They are uniformly subject to the jurisdiction of Pennsylvania courts.

---

[10] *See, e.g.*, *Tenn. Wine & Spirits Retailers Ass'n v. Thomas*, 588 U.S. 504 (2019); *Jean-Paul Weg LLC v. Dir. of N.J. Div. of Alcoholic Beverage Control*, 133 F.4th 227 (3d Cir. 2025); *Dep't of Revenue of Ky. v. Davis*, 553 U.S. 328 (2008).

[11] *See Pike v. Bruce Church, Inc*., 397 U.S. 137, 142 (1970) ("Where the statute regulates even-handedly … and its effects on interstate commerce are only incidental, it will be upheld unless the burden imposed on such commerce is clearly excessive...."). Here, there is no proven effect on interstate commerce.

Importantly, to the extent HHI appears to assert that Pennsylvania's statute has discriminatory *effect*, HHI must carry the burden of putting on "significantly probative, and not merely colorable" evidence of a discriminatory effect on interstate commerce. *See Kleinsmith v. Shurtleff*, 571 F.3d 1033, 1040 (10th Cir. 2009) (quotation omitted). As the Tenth Circuit explained:

> That party [challenging the statute] must show "both how local economic actors are favored by the legislation, and how out-of-state-actors are burdened." *Cherry Hill Vineyards, LLC v. Lilly*, 553 F.3d 423, 432 (6th Cir. 2008) (internal quotation marks omitted). Not every benefit or burden will suffice–**only one that "alters the competitive balance between in-state and out-of-state firms**." [*Cherry Hill Vineyard, LLC v. Baldacci*, 505 F.3d 28, 36 (1st Cir. 2007)]; *see West Lynn Creamery, Inc. v. Healy*, 512 U.S. 186, 196, 114 S.Ct. 2205, 129 L.Ed.2d 157 (1994) (a state law that "cause[s] local goods to constitute a larger share, and goods with an out-of-state source to constitute a smaller share, of the total sales in the market" is unconstitutional "because it, like a tariff, neutralizes advantages belonging to the place of origin." (brackets and internal quotation marks omitted)); *R & M Oil & Supply, Inc. v. Saunders*, 307 F.3d 731, 734–35 (8th Cir. 2002) (Illinois-based propane seller failed to present sufficient evidence that Missouri statute requiring sellers to have in-state propane-storage facility put it at competitive disadvantage); *see also Cloverland–Green Spring Dairies, Inc. v. Pa. Milk Mktg. Bd.*, 462 F.3d 249, 260–70 (3d Cir. 2006) (out-of-state challenger failed to show that Pennsylvania milk-pricing scheme negated its competitive advantage).

*Kleinsmith*, 571 F.3d at 1041 (emphasis added).

HHI has made no effort whatsoever to meet its burden to show "significantly probative" evidence that Pennsylvania companies obtain any competitive advantage by foreign registered companies being subject to general jurisdiction in Pennsylvania, or that HHI is somehow at a competitive disadvantage. Simply put, there is *zero* proven discriminatory effect by an in-state versus out-of-state company consenting to jurisdiction for the litigation of claims in Pennsylvania.[12] An agreement to *potentially* litigate claims in a certain forum does not create any concrete or measurable new or additional liabilities against the foreign company – it simply

---

[12] *See, e.g.*, *Exxon Corp. v. Governor of Maryland*, 437 U.S. 117, 126 (1978) ("[The state law] does not prohibit the flow of interstate goods, place added costs upon them, or distinguish between in-state and out-of-state companies in the retail market. **The absence of any of these factors fully distinguishes this case from those in which a State has been found to have discriminated against interstate commerce**." (emphasis added)).

identifies an additional location where a possible future suit *could* be filed.[13] HHI has wholly failed to substantiate how mere "exposure to suits" in this state acts as an imposition on interstate commerce. Justice Alito's concurrence is neither "probative evidence" nor binding precedent on that point.

Further, the relevant law has been in effect for over 40 years, and yet HHI has not identified any other case where an out-of-state corporation has shown discriminatory effect by consenting to general jurisdiction in Pennsylvania. The registration statute does not "build up ... domestic commerce" through "burdens upon the industry and business of other States." *Nat'l Pork Producers Council v. Ross*, 598 U.S. 356, 369 (2023). It does not "burden out-of-state [companies] simply to give a competitive advantage to in-state businesses." *Granholm v. Heald*, 544 U.S. 460, 472 (2005). It does not give "differential treatment of in-state and out-of-state economic interests that benefits the former and burdens the latter." *Oregon Waste Sys., Inc. v. Dep't of Env't Quality of State of Or.*, 511 U.S. 93, 99 (1994). Put simply, Pennsylvania's registration statute does not discriminate against interstate commerce. And with HHI having failed to meet its initial burden of proof, there is no need for this Court to consider whether "the statute serves a legitimate local purpose, and [if] this purpose could not be served as well by available nondiscriminatory means." *Cloverland-Green Spring Dairies, Inc. v. Pennsylvania Milk Mktg. Bd.*, 462 F.3d 249, 261 (3d Cir. 2006) (discussing shifting burdens applicable to Dormant Commerce Clause challenges) (citation omitted).[14]

Notwithstanding the total lack of any controlling legal authority that would require blanket invalidation of Pennsylvania's registration statute as violative of the Dormant Commerce Clause, issues concerning the Dormant Commerce Clause are immaterial where consent exists. For example, in *Denver & R. G. W. R. Co. v. Terte*, 284 U.S. 284 (1932), the Supreme Court considered

---

[13] HHI has not explained how having to incur defense costs for claims litigated in Pennsylvania is any more burdensome than having to resolve claims in another U.S. state, or in London, or in South Korea. The "burden of defense" would be incurred regardless of where the merits of the claim are adjudicated.

[14] Any attempt by HHI to use its reply brief to try to cure its evidentiary failure should be rejected. *Filer v. Foster Wheeler LLC*, 994 F. Supp. 2d 679, 692 (E.D. Pa. 2014) (noting that if a party chooses to wait until reply briefing to adequately raise its arguments, then the "Court need not address them."). To the extent the Court allows such factual submissions in reply, however, Plaintiffs should be permitted fair opportunity to submit a sur-reply as needed to respond to new arguments and evidence.

whether a Missouri state court could hear personal injury claims brought against two different railroads in Missouri for alleged injuries sustained out of state. One of the railroads, Rio Grande, did not own or operate any rail lines in the state and, most importantly, was "not licensed to do business in Missouri." *Id*. at 286. The Supreme Court held that allowing suit in Missouri as against Rio Grande would violate the commerce clause. *Id*. at 287. However, claims against Santa Fe (another foreign railroad) could proceed given, *inter alia*, it was "licensed to do business in Missouri…" *Id*. at 286. In other words, the Dormant Commerce Clause did not invalidate the consent to jurisdiction given by the railroad that had registered to do business in Missouri.[15]

Finally, not every legal issue is one that can be shoe-horned into the scope of the Commerce Clause. For example, in invalidating the Gun-Free School Zone Act, the Supreme Court observed that "[t]he Act neither regulates a commercial activity nor contains a requirement that the possession be connected in any way to interstate commerce. We hold that the Act exceeds the authority of Congress '[t]o regulate Commerce ... among the several States....'" *U.S. v. Lopez*, 514 U.S. 549, 551 (1995).

So too, not every state statute necessarily implicates the Dormant Commerce Clause. That Pennsylvania chose to enact a law that expressly informs ***all*** corporations registered in the state that they are subject to general jurisdiction by virtue of that registration does not impact interstate commerce. It has no extraterritorial effect on how foreign companies structure or conduct their out-of-state business.[16] It is a wholly intra-state exercise of Pennsylvania's authority over entities that have elected to come into the state. Merely being subject to personal jurisdiction in a specific

---

[15] Other Supreme Court cases involving Commerce Clause challenges similarly looked to the existence of consent. *See, e.g*., *Atchison, T. & S. F. R. Co. v. Wells*, 265 U.S. 101, 103 (1924) (holding a Texas court exercising jurisdiction over Kansas corporation would violate the Dormant Commerce Clause because the Kansas corporation "had not been admitted to Texas as a foreign corporation;" "had not consented to be sued there;" and, "had no agent there"); *Michigan Cent. R. Co. v. Mix*, 278 U.S. 492, 493 (1929) (finding Michigan corporation not subject to suit in Missouri where "[i]t has not consented to be sued there [and] has never been admitted to do business there…").

[16] "[T]he Commerce Clause protects against inconsistent legislation arising from the projection of one state regulatory regime into the jurisdiction of another State." *Healy v. Beer Inst., Inc*., 491 U.S. 324, 336–37 (1989). "A statute will have an extraterritorial reach if it necessarily requires out-of-state commerce to be conducted according to in-state terms." *Pharm. Rsch. & Mfrs. of Am. v. Concannon*, 249 F.3d 66, 79 (1st Cir. 2001), aff'd, *Pharm. Rsch. & Mfrs. of Am. v. Walsh*, 538 U.S. 644 (2003) (quotation omitted).

forum does not inherently impose any costs on a foreign corporation. Rather, potential future litigation costs incurred by a foreign corporation are simply the *post hoc* effect of a court's recognition of that company's prior consent to jurisdiction.[17] And it is worth recognizing that Congress has not seen fit to issue any sort of nationwide statute concerning personal jurisdiction (assuming that it potentially possesses the Constitutional authority to do so). Where Congress has wholly declined to exercise whatever regulatory authority it might otherwise possess over a certain issue, it is reasonable to believe that Congress has, at least implicitly, left such issues for the states to regulate as they see fit. This Court should decline HHI's invitation to strike down Pennsylvania's democratically-enacted registration statute, especially in the absence of any controlling authority that requires such a result. *See Nat'l Pork Producers*, 598 U.S. at 390 ("Preventing state officials from enforcing a democratically adopted state law in the name of the dormant Commerce Clause is a matter of 'extreme delicacy,' something courts should do only 'where the infraction is clear.'" (citation omitted)).

## III.    NO BASIS FOR ARBITRATION ON ANY OF PLAINTIFFS' CLAIMS

Because HHI's FNC argument is substantially premised on the faulty assumption that both Grace Ocean and Synergy are subject to forum selection/arbitration agreements for all claims, Plaintiffs take HHI's next arguments slightly out of order.

### A.    HHI Has No Arbitration Agreement with Synergy

As HHI correctly notes (Dkt. 37-1 at p. 21), whether an agreement to arbitrate exists is a question that must be decided by this Court. Acknowledging that, however, HHI entirely glosses over the requisite analysis, jumping to the conclusion that it has a binding arbitration agreement with both Grace Ocean and Synergy. But when tracing the various contracts on which HHI relies, it is clear that **HHI has no contract with <u>Synergy</u>**.

HHI's argument starts with the Shipbuilding Contract – an agreement that was between "Stellar Marine LLC (as Buyer)" and HHI (as Builder). Dkt. 37-7 at p. 2. Neither Grace Ocean nor

---

[17] Such nebulous/inchoate/potential future costs are simply too speculative to serve as a legitimate "burden" on interstate commerce. "[C]onjecture 'is no replacement for the kind of proof of real burdens, as opposed to 'hypothetical' burdens, needed to support such a [Dormant Commerce Clause] challenge.'" *Moskovic v. City of New Buffalo*, 638 F. Supp. 3d 770, 792 (W.D. Mich. 2022) (quoting *Garber v. Menendez*, 888 F.3d 839, 845 (6th Cir. 2018)).

Synergy is a party to the Shipbuilding Contract. Soon after delivery of the Vessel, when Stellar sold the Vessel to Grace Ocean via an intermediate buyer Lepta Shipping Co., Ltd. ("Lepta"), those three parties entered a Quadripartite Assignment Agreement with HHI by which Stellar assigned its rights under Article IX of the Shipbuilding Contract ("Assignment Agreement") only to Lepta and, in turn, Lepta assigned such rights to Grace Ocean, all with HHI's "acknowledgement and consent." Dkt. 37-8 at pp. 6, 34.

HHI and Grace Ocean entered into a settlement agreement dated October 15, 2021 (the "Settlement Agreement") pursuant to which the parties intended to "settle all outstanding guarantee issues and matters under Article IX of the Shipbuilding Contract." Dkt. 37-9 at p. 2. HHI contends that the Settlement Agreement contains "a valid arbitration agreement *between* HHI, Grace Ocean, and **Synergy**." Dkt. 37-1 at p. 28 (emphasis added). That is simply false – Synergy is not even a party to the Settlement Agreement. Rather, it is between HHI and Grace Ocean only, as made clear in the first sentence of the contract (Dkt. 37-9, p. 2):

## SETTLEMENT AGREEMENT

This Settlement Agreement is made on Oct 15, 2021 by and between Grace Ocean Private Limited (hereinafter called the "Buyer") and Hyundai Heavy Industries Co., Ltd. (hereinafter called the "Builder").

The Parties to the Settlement Agreement are defined terms – Grace Ocean as "Buyer" and HHI as "Builder." Synergy is not identified as a "Party" or any other defined term.

As noted, the Settlement Agreement narrowly proclaims that "[t]he *Builder* and the *Buyer* now wish to settle all outstanding guarantee issues and matters under Article IX of the Shipbuilding Contract" (emphasis added). Nowhere does the contract discuss any claims, rights, or obligations belonging to or running against **Synergy**. And nor does Synergy obtain any benefit whatsoever from HHI and Grace Ocean's Settlement Agreement.

HHI hangs its hat entirely on the fact that Synergy signed the Settlement Agreement but ignores that it did so only under the following prefatory language:

16

In witness whereof, the Buyer and Builder hereto have caused this Settlement Agreement to be duly executed and entered into effective on the date and year first above written.

HHI's position is thus factually unsupportable – and indeed, fully contradicted – by the plain language of the Settlement Agreement.

"Arbitration is a creature of contract [and as] a matter of contract, no party can be forced to arbitrate unless that party has entered into an agreement to do so." *First Liberty Inv. Grp. v. Nicholsberg*, 145 F.3d 647, 649 (3d Cir. 1998) (internal citation and quotation omitted). *See also Gen. Elec. Co. v. Deutz AG*, 270 F.3d 144, 154 (3d Cir. 2001) ("A court may only compel a party to arbitrate where that party has entered into a written agreement to do so."). Here, there is simply no written agreement with (1) Synergy as a party and (2) where Synergy agreed to arbitration of its claims. Because HHI has failed to meet its threshold burden to show a contractual obligation on Synergy to arbitrate ***anything***, HHI's request to dismiss or stay the entirety of this action in favor of arbitration must fail. Synergy's claims against HHI simply are not subject to arbitration.[18]

### B. Grace Ocean's Claims Are Not Subject to Arbitration

The analysis vis-à-vis Grace Ocean is different, but the outcome is the same: Grace Ocean's claims in this action are not subject to arbitration. Grace Ocean concedes that it was a party to the Settlement Agreement, which contains an arbitration provision. HHI is not correct, however, that the claims asserted in this action fall within the scope of the Settlement Agreement. Nor is HHI correct that the question of arbitrability should be decided by arbitrators.

#### 1. This Court, And Not Arbitrators, Must Decide the Threshold Question of Arbitrability

The Settlement Agreement, between two foreign parties and calling for arbitration in England, is subject to the New York Convention. The Federal Arbitration Act ("FAA") implements the New York Convention. 9 U.S.C. §§ 201–208; *see Scherk v. Alberto–Culver Co.*,

---

[18] This same logic forecloses HHI's argument that "Plaintiffs have released their claims." Synergy is a Plaintiff and has not been party to any settlement agreement with HHI. Thus, its claims could not have been released.

417 U.S. 506, 520 n.15 (1974). Under the FAA, federal law controls the question of arbitrability. *See Harris v. Green Tree Fin. Corp.*, 183 F.3d 173, 178 (3d Cir. 1999).

U.S. Supreme Court authority makes clear that the question of whether a particular claim is subject to arbitration is for the court to decide unless the parties' agreement "clearly and unmistakably" delegates that authority to the arbitrators. *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 586 U.S. 63, 69 (2019) (citing cases). More particularly, a court "should not assume that the parties agreed to arbitrate arbitrability unless there is clear and unmistakable evidence that they did so." *Id.* at 72 (quotation omitted). It is presumed that courts should decide questions of arbitrability, and "[t]he burden of overcoming the presumption is onerous, as it requires express contractual language unambiguously delegating the question of arbitrability to the arbitrator." *Opalinski v. Robert Half Int'l Inc.*, 761 F.3d 326, 335 (3d Cir. 2014), *cert. denied*, 135 S.Ct. 1530 (2015). "Silence or ambiguous contractual language is insufficient to rebut the presumption." *Id.*

Here, HHI's argument is that the contract does so because the arbitration clause incorporates the English Arbitration Act of 1996 (the "Act") and also the LMAA Rules 2021, which incorporate the Act. HHI further argues that section 30(1) of the Act provides as follows:

Unless otherwise agreed by the parties, the arbitral tribunal may rule on its own substantive jurisdiction, that is, as to—

    (a) Whether there is a valid arbitration agreement,

    (b) Whether the tribunal is property constituted, and

    (c) What matters have been submitted to arbitration in accordance with the arbitration agreement

Dkt. 37-1 at p. 22.

In its motion papers, HHI cites no cases holding that incorporation of LMAA Rules and/or the Act constitutes a "clear and unmistakable" agreement to arbitrate. More notably, it ignores a ruling from the Ninth Circuit Court of Appeals which directly and flatly rejects that argument. In *Cape Flattery Ltd. V. Titan Mar., LLC*, 647 F.3d 914, 921 (9th Cir. 2011), the court stated:

In this case, there is no clear and unmistakable evidence that the parties agreed to apply English arbitrability law. The arbitration provision states that "[a]ny dispute arising under this Agreement shall be settled by arbitration in London, England, in accordance with the English Arbitration Act 1996 and any amendments thereto, English law and practice to apply." Under this provision, English arbitration law

clearly applies to disputes that are subject to arbitration, and English law and practice are to be applied by the arbitrator. . . . <u>However, the agreement is ambiguous concerning whether English law also applies to determine whether a given dispute is arbitrable in the first place. Faced with such ambiguity, we conclude that federal law applies to determine arbitrability</u>. [Emphasis added.]

Rather than address *Cape Flattery*, HHI instead attempts to analogize cases holding that where an arbitration clause incorporates AAA Rules (which specify that questions of arbitrability are for the arbitrators) as sufficient to meet the Supreme Court's "clear and unmistakable" standard. (Dkt. 37-1 at pp. 22-23). But notably, in 2015, the Ninth Circuit considered this same issue when determining whether the AAA Rules met the "clear and unmistakable" standard. *Brennan v. Opus Bank*, 796 F.3d 1125 (9th Cir. 2015). There, the Ninth Circuit relied on its earlier *Cape Flattery* ruling to find that the arbitration clause was ambiguous as to whether the parties had agreed to apply non-Federal law to decide the question of arbitrability. *Id.* at 1129. Consequently, it held that the federal court must decide arbitrability under federal law. *Id.* at 1130. It next decided, however, that because the arbitration clause incorporated the AAA Rules, the contract clearly and unmistakably delegated the question of arbitrability to the arbitrators. *Id.* at 1130–31. In other words, the Ninth Circuit recognized a distinction between incorporating arbitration rules that specifically delegate arbitrability questions to the arbitrators and merely incorporating a governing law concerning the merits of the claim that purports to do the same thing. The latter, it found, was ambiguous as to whether the parties intended that choice of law to apply to the threshold question of who decides arbitrability; consequently, that question must be decided under federal law by the Court. *See also Manasse v. Prudential-Bache Secs.*, 840 F. Supp. 42, 44 (W.D. Pa. 1993) ("While the arbitration agreement provides that New York law applies to any dispute . . . *on the contract*, it does not explicitly state that *arbitrability disputes* are governed by New York law." (emphasis in original)); *Hong Kong Cont. Trade Co. Ltd. V. Nat. Balance Pet Foods, Inc.*, 2023 WL 2664246, *7 (C.D. Cal. 2023)(arbitration clause providing the agreement "shall be governed in all respects" by New York law did not provide clear and unmistakable evidence of an intent to apply non-federal law to determine arbitrability).

Although the Third Circuit has followed the trend in finding that an "incorporation of AAA Rules constitutes clear and unmistakable evidence that the parties agreed to arbitrate

arbitrability," *Richardson v. Coverall North America, Inc.*, 811 F. Appx. 100 (3d Cir. 2020) (citation omitted), it has also preached caution where any ambiguity might exist. *See also Cont. Materials, Inc. v. Veer Plastics*, 2023 WL 2795345, at *2 (E.D. Pa. 2023) (recognizing line of cases finding AAA Rules meet the test but noting that "where a dispute arguably falls within a narrow carve-out provision, circuit courts have found that questions of arbitrability should remain with the court.").

Notably, no case within the Third Circuit has specifically considered the issue here at hand, namely whether incorporation of LMAA Rules and/or the English Arbitration Act should divest the Court of jurisdiction to determine arbitrability. On the other hand, at least two Pennsylvania District Court decisions have ruled on applications to compel arbitration where the clause incorporated the rules of the LMAA rather than refer the question to the arbitrators. *Frederico v. Charterers Mut. Assur. Ass'n Ltd*, 158 F. Supp 2d 565 (E.D. Pa. 2001); *Glencore AG v. Alexander Finance Inc.*, 2001 WL 179871 (E.D. Pa. 2001).[19]

### 2.  Grace Ocean's Claims Are Not Subject to Arbitration

HHI strains to invoke the Shipbuilding Contract as a basis to compel arbitration of Grace Ocean's claims here, arguing:

> All of plaintiffs' claims concern both (a) "the operation or construction" of "any matter or thing" contained in the Shipbuilding Contract – namely the M/V DALI, and (b) a "matter or thing in any way connected with" the Shipbuilding Contract – again the M/V DALI. Likewise, Plaintiff's claims concern "the rights, duties or liabilities of either party under or in connection with" the Shipbuilding Contract (including those addressed by the Settlement Agreement…).

Dkt. 37-1 at p. 24.

But this argument fails for several reasons. The first and most obvious is that Grace Ocean is not a party to the Shipbuilding Contract. That contract was between HHI and Stellar Marine.

---

[19] *Gemini Ins. Co. v. Certain Underwriters at Lloyd's*, Civ. Action No. H-17-1044, 2017 WL 1354149 (S.D. Tex. 2017), does not counsel a different result. There, the district court considered a similar question but rejected the reasoning in *Cape Flattery* in view of the Fifth Circuit's ruling in *Crawford Professional Drugs v. CVS Caremark Corp.*, 748 F.3d 249 (5th Cir 2014), where the court found that an arbitration clause incorporating the AAA Rules sufficiently met the Supreme Court's "clear and unmistakable" requirement. But in so doing, the *Gemini* court ignored the ruling in *Brennan*, discussed above, where the Ninth Circuit made clear that its ruling in *Cape Flattery* could comfortably coexist with the AAA Rules line of cases.

(Dkt. 37-7). Nothing in the Complaint can possibly be read as a claim implicating the Shipbuilding Contract in any way. And while Grace Ocean did receive an *assignment of certain rights* under Article IX of the Shipbuilding Contract, (Dkt No. 37-8), that is not the same as assuming or being novated to the agreement or otherwise being bound by its terms. *See, e.g.*, *Rhoads Indus., Inc. v. Shoreline Found., Inc.*, No. CV 15-921, 2022 WL 4021766, at *12 n.11 (E.D. Pa. Sep. 2, 2022) ("The rights and benefits of a contract may be transferred by an *assignment*, but the obligations, burdens, and liabilities of a contract may only be transferred upon a *novation*."). In any event, nothing in the Complaint in any way invokes or otherwise implicates the assignment of rights. Lest there be any doubt, one need only note that Grace Ocean and Synergy both plead the exact same causes of action even though Synergy was not a party to any of the contracts referenced by HHI.[20]

As to the Settlement Agreement, HHI fundamentally misconstrues the arbitration clause contained therein. HHI's interpretation assumes that the reference to "this CONTRACT" shall mean "the Shipbuilding Contract."[21] However, it is clear that in the context of the Settlement Agreement, "this CONTRACT" can only be construed as meaning "the Settlement Agreement." In circumstances where Grace Ocean is not a party to the Shipbuilding Contract, and given the limited ambit of the Settlement Agreement, there is no scope to give a broader interpretation of the arbitration agreement.

Further, HHI grossly overstates the intent and scope of that agreement. The Settlement Agreement, which specifically references the Assignment Agreement, recites at paragraph F: "The Builder and the Buyer now wish to settle all outstanding guarantee issues and matters under Article IX of the Shipbuilding Contract." *See* Dkt No. 37-9. This statement could not be clearer about the limited scope of the agreement and must be taken at its face. Paragraph 1 recites the payment of USD 170,800 "in full and final settlement of any and all claims and disputes including the Vessel's delivery pending items *under the Shipbuilding Contract*." (Emphasis added). Paragraph 2 provides

---

[20] While Synergy's claims are not subject to arbitration for the reasons set forth above, in the event Synergy were deemed a party to the Settlement Agreement (which is denied), its claims are also not subject to arbitration for the same reasons set forth herein.

[21] In relevant part, this reads as follows: "If any dispute or difference shall arise between the parties hereto concerning any matter or thing herein contained, or the operation or construction thereof, or any matter or thing in any way connected with **this CONTRACT**, then, in every such case, the dispute or difference shall be referred to arbitration in London, England." (Emphasis added).

that Grace Ocean releases HHI "from any and all obligations and liabilities arising in relation to the matters set out in paragraph 1, except the specified items listed in the enclosed Side Letter." Although not appended to HHI's papers, the referenced "side letter" identified certain of Grace Ocean's Article IX warranty items that were to remain pending. All of this taken together clearly demonstrates that the intent and scope of the Settlement Agreement was by its terms narrowly related to any claim Grace Ocean had against HHI pursuant to its assigned rights under Article IX of the Shipbuilding Contract. No more and no less.

HHI's argument quoted above suggests that the reference in the Settlement Agreement to the arbitration clause in the Shipbuilding Contract somehow represents a broad importation of all of the rights and obligations arising under that agreement, but that is simply not the case. The clause says only that: "The governing law and arbitration clauses contained in the Shipbuilding Contract shall also apply to this Settlement Agreement." Nothing in that statement suggests any other term or provision is incorporated by reference or otherwise.

The Supreme Court in *East River S.S. Corp. v. Transamerica Delaval, Inc.*, 476 U.S. 858 (1986), clearly explained the distinction between breach of contractual warranty claims and product liability and tort claims:

> The paradigmatic products-liability action is one where a product "reasonably certain to place life and limb in peril," distributed without reinspection, causes bodily injury. The manufacturer is liable whether or not it is negligent because "public policy demands that responsibility be fixed wherever it will most effectively reduce the hazards to life and health inherent in defective products that reach the market."

> For similar reasons of safety, the manufacturer's duty of care was broadened to include protection against property damage. Such damage is considered so akin to personal injury that the two are treated alike.

*Id*. at 866–67 (internal citations omitted). Further:

> "The distinction that the law has drawn between tort recovery for physical injuries and warranty recovery for economic loss is not arbitrary and does not rest on the 'luck' of one plaintiff in having an accident causing physical injury. The distinction rests, rather, on an understanding of the nature of the responsibility a manufacturer must undertake in distributing his products." When a product injures only itself the reasons for imposing a tort duty are weak and those for leaving the party to its contractual remedies are strong.

22

*Id.* at 871.[22] Similarly, under the "gist of the action" doctrine, if a tort claim is alleged based upon actions of a contracting party not governed by contractual obligations, such claim is not viewed as based upon the underlying contract because the contract was merely a mechanism that established the relationship between the parties during which a tort was committed. *See Bruno v. Roundhouse Cycles Inc.*, 750 F. Supp. 3d 501, 512 (W.D. Pa. 2024).

Simply put, nothing in Plaintiffs' complaint can in any way be construed as asserting a breach of warranty claim under the Shipbuilding Contract, the Assignment Agreement, or the Settlement Agreement, and HHI's attempt to invoke the arbitration provision of the Settlement Agreement is wholly misplaced with respect to Plaintiffs' tort product liability, negligence, implied warranty and indemnity/contribution causes of action.

## IV.   *FORUM NON CONVENIENS* INADEQUATELY RAISED

The Third Circuit has explained the considerations governing a defendant's FNC argument as follows:

> "It is settled that ***the defendant bears the burden of persuasion as to all elements of the forum non conveniens analysis***." *Lacey* [*v. Cessna Aircraft Co.*, 862 F.2d 38, 43–44 (3d Cir.1988)]. This burden comprises two basic elements. The defendant must establish, initially, that an adequate alternative forum exists as to all defendants. *Id*. at 44. If the defendant satisfies this burden, it must then show that the private and public interest factors weigh ***heavily*** in favor of dismissal. *Id*.
>
> *    *    *
>
> Once a defendant establishes that another forum is adequate (and available) to hear the case, the focus then shifts to the private and public interest factors catalogued in *Gulf Oil* and *Piper*....
>
> *    *    *
>
> To prevail on a forum non conveniens motion, the movant must show that the balance of these factors tips decidedly in favor of trial in the foreign forum. *In re Air Crash* [*Disaster Near New Orleans, La. on July 9, 1982*, 821 F.2d 1147, 1164 (5th Cir.1987)] ("[T]he moving defendant must ... establish that the private and public interests weigh heavily on the side of trial in the foreign forum."). ***If, when added together, the relevant private and public interest factors are in equipoise,***

---

[22] *See also Petrobras America, Inc. v. Vicinay Cadenas, S.A.*, 921 F. Supp. 2d 685 (S.D. Tex. 2013), wherein the court noted that "Plaintiffs' claims are not dependent on reference to the Purchase Order—they are not based on express warranties contained in the Purchase Order as [defendant] argues. Plaintiffs' Original Complaint contains claims for negligence, gross negligence, products liability, and breach of implied warranty." *Id*. at 695. The court concluded that "[t]he available evidence thus indicates that [defendant's] representations to [plaintiff] rather than any express terms of the Purchase Order form the basis of Plaintiffs' claims against [defendant]." *Id*.

> *or even if they lean only slightly toward dismissal, the motion to dismiss must be denied*.

*Lacey v. Cessna Aircraft Co*., 932 F.2d 170, 180 (3d Cir. 1991) (emphasis added).

Here, HHI has wholly failed to meet its burden. First, HHI clearly found Pennsylvania a convenient place to do business in 2002 when it registered to do business in this jurisdiction, and during the period 2005-2017 when it partnered with Philly Shipyard for design and procurement services <u>during the construction of 22 commercial product tankers,</u> and then again as recently as 2024, when it entered into a memorandum of understanding with Philly Shipyard concerning vessel maintenance, repairs and operations in Philadelphia.

Second, HHI has failed to prove the availability of another adequate forum. Indeed, HHI's entire argument is based on the false premise that Synergy and Grace Ocean have agreed to arbitrate their disputes in London, which is demonstrably not the case. England is not at all ***available*** as a forum where HHI could force Synergy to press its claims against HHI. Again, HHI is flatly wrong in its assertion that **<u>both</u>** "Plaintiffs and HHI have agreed to a valid forum-selection clause…." There is no such agreement with Synergy and, as detailed above, the only agreement with Grace Ocean does not pertain to these claims.

To the extent that HHI argues that, even in the absence of an arbitration agreement, FNC dismissal should still be granted in favor of South Korean courts, HHI has (once again) failed to meet its burden. That is, it was incumbent on HHI to affirmatively demonstrate with competent evidence that South Korea is an adequate forum. *See, e.g.*, *Burke v. Quartey*, 969 F. Supp. 921, 930 (D.N.J. 1997) ("To satisfy the adequacy requirement, however, the defendant must establish not only that he is amenable to process in the foreign forum, but also that the foreign forum provides the plaintiff the opportunity for appropriate redress…. Defendant offers no affidavits or other record evidence to show that Ghanaian or French law would permit recovery for the claims plaintiff purports to state in his complaint."). Similarly, no such evidence was offered by HHI.

Thus, HHI failed to prove an adequate alternative forum for all of Plaintiffs' claims in this action. And it is only ***after*** that initial threshold is met that the Court may consider whether HHI adequately addressed the various public and private interest factors. *See Lacey*, 932 F.2d at 180 ("If the defendant satisfies [the adequate alternative forum] burden, it must then show that the private and public interest factors weigh heavily in favor of dismissal."). Because HHI failed in its

threshold burden, the Court need not go further. But if the Court elects to overlook HHI's alternative-forum shortcoming, it is once again confronted by another deficiency in HHI's brief.

Specifically, HHI fails to undertake any discussion of the private interest factors relevant to the FNC analysis. HHI intentionally made that decision, arguing that the Court "must deem the private-interest factors to weigh entirely in favor of the preselected forum" where there is an arbitration/forum selection agreement. But again, no such agreement exists with respect to Plaintiffs' claims. Having failed to meaningfully address an entire subset of FNC factors, HHI has failed to show that the full spate of factors weight "heavily" in favor of dismissal.

"[A]rguments raised in passing ... but not squarely argued[ ] are considered waived." *John Wyeth & Bro. Ltd. v. CIGNA Int'l Corp.*, 119 F.3d 1070, 1076 n.6 (3d Cir. 1997). A party "must unequivocally put its position before the trial court at a point and in a manner that permits the court to consider its merits." *Shell Petroleum, Inc. v. U.S.*, 182 F.3d 212, 218 (3d Cir. 1999). If a party chooses to wait until reply briefing to adequately raise its arguments, then the "Court need not address them." *Filer*, 994 F. Supp. 2d at 692. Here, HHI has repeatedly failed to meet its burdens of both persuasion and evidence. Attempts to cure these deficiencies in HHI's reply should be rejected. If not, the Court must permit Plaintiffs the opportunity to rebut any new "reply" arguments by HHI in a sur-response, if necessary.

## CONCLUSION

In sum, HHI is subject to general jurisdiction because it consented to that outcome. HHI cannot now rescind that consent after it has been served. Consent to jurisdiction via Pennsylvania's state-law registration statute has just recently been affirmed as constitutional under the Due Process Clause, and HHI has failed to meet its burden of proof on its Dormant Commerce Clause theory of defense. Plaintiffs' claims are not subject to arbitration and can and should be resolved in this action.

**WHEREFORE**, Plaintiffs respectfully request that the Court deny HHI's motion to dismiss and alternative request to stay this action pending arbitration.

Dated: October 22, 2025

BLANK ROME LLP

*/s/ Terry M. Henry*

Terry M. Henry (Bar No. 77455)
Terry.Henry@blankrome.com
One Logan Square
130 North 18th Street
Philadelphia, PA 19103
(215) 569-5500

William R. Bennett, III*
William.Bennett@blankrome.com
Thomas H. Belknap, Jr.*
Thomas.Belknap@blankrome.com
Alan M. Weigel*
Alan.Weigel@blankrome.com
1271 Avenue of the Americas
New York, NY 10020
(212) 885-5000

Emma C. Jones*
Emma.Jones@BlankRome.com
1825 Eye Street NW
Washington, DC 20006
(202) 420-2200

*Admitted *Pro hac vice*

**<u>CERTIFICATE OF SERVICE</u>**

I CERTIFY that on this 22nd day of October 2025, the foregoing was filed in the United States District Court for the Eastern District of Pennsylvania via the Court's CM/ECF filing system, which will provide notice of this filing to all counsel of record.

_/s/ Terry M. Henry_