# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

GRACE OCEAN PRIVATE LIMITED, as Owner of the M/V DALI, and SYNERGY MARINE PTE LTD, as Manager of the M/V DALI,

Plaintiffs,

v.

HYUNDAI HEAVY INDUSTRIES CO., LTD.,

Defendant.

Civil Action No. 2:25-cv-04374-KNS

**ORAL ARGUMENT REQUESTED**

**HD HYUNDAI HEAVY INDUSTRIES CO., LTD.'S REPLY MEMORANDUM OF LAW
IN SUPPORT OF ITS MOTION TO DISMISS THE ACTION OR,
IN THE ALTERNATIVE, STAY PENDING ARBITRATION**

**TABLE OF CONTENTS**

ARGUMENT ..................................................................................................................1

    I.    Plaintiffs' Claims Should Be Resolved In Arbitration ...........................................1

        A.    Synergy Is Bound By The Settlement Agreement It Signed ........................1

        B.    The Arbitration Clause Delegates Arbitrability To The Arbitrator .............3

        C.    The Broad Arbitration Clause Covers Plaintiffs' Claims ...........................5

    II.    The Complaint Should Be Dismissed Under *Forum Non Conveniens* ....................7

    III.    Plaintiffs Have Waived Any Response To HHI's Release-Of-Claims Argument ...............................................................................................................8

    IV.    This Court Lacks Personal Jurisdiction Over HHI ................................................9

CONCLUSION.............................................................................................................10

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Atlantic Marine Construction Company v. United States District Court for Western District of Texas*,
571 U.S. 49 (2013)...................................................................................................8

*Bane v. Netlink, Inc.*,
925 F.2d 637 (3d Cir. 1991).....................................................................................9

*Brennan v. Opus Bank*,
796 F.3d 1125 (9th Cir. 2015) .................................................................................4

*Cape Flattery Limited v. Titan Maritime, LLC*,
647 F.3d 914 (9th Cir. 2011) ................................................................................3, 4

*Caplan v. Stant*,
154 S.E.2d 121 (Va. 1967)........................................................................................2

*Carr v. Travelers Home & Marine Insurance Company*,
700 F. Supp. 3d 288 (E.D. Pa. 2023) .......................................................................9

*Chassen v. Fidelity National Financial, Inc.*,
836 F.3d 291 (3d Cir. 2016)......................................................................................7

*Christopher v. SmithKline Beecham Corporation*,
567 U.S. 142 (2012)...................................................................................................6

*DTEX, LLC v. BBVA Bancomer, S.A.*,
508 F.3d 785 (5th Cir. 2007) (per curiam)................................................................8

*East River Steamship Corporation v. Transamerica Delaval, Inc.*,
476 U.S. 858 (1986)...................................................................................................7

*Esselstyn v. McDonald*,
90 N.Y.S. 518 (App. Div. 1904).................................................................................2

*Friedman v. Yula*,
679 F. Supp. 2d 617 (E.D. Pa. 2010) ...............................................................1, 2, 5

*George v. Tate*,
102 U.S. 564 (1880)...................................................................................................2

*Internaut Shipping GmbH v. Fercometal SARL*,
[2003] EWCA Civ 812 ..............................................................................................2

*John Wyeth & Brother v. CIGNA International Corporation*,
119 F.3d 1070 (3d Cir. 1997)..............................................................................................9

*Lynch v. Tasty Baking Company*,
2024 WL 2848295 (E.D. Pa. June 5, 2024) ........................................................................9

*Mallory v. Norfolk Southern Railway Company*,
600 U.S. 122 (2023)........................................................................................................9, 10

*Marmet Health Care Center, Inc. v. Brown*,
565 U.S. 530 (2012) (per curiam) ........................................................................................7

*Medical & Health Employees v. Klein*,
631 N.Y.S.2d 176 (App. Div. 1995) ....................................................................................2

*Morales v. Sun Constructors, Inc.*,
541 F.3d 218 (3d Cir. 2008)................................................................................................2

*Pennsylvania Fire Insurance Company of Philadelphia v. Gold Issue Mining &
Milling Company*,
243 U.S. 93 (1917)..............................................................................................................9

*Pacemaker Yacht Company v. NLRB*,
663 F.2d 455 (3d Cir. 1981)................................................................................................3

*Pike v. Bruce Church, Inc.*,
397 U.S. 137 (1970).........................................................................................................10

*Piper Aircraft Company v. Reyno*,
454 U.S. 235 (1981)............................................................................................................8

*Schering Corporation v. First Databank, Inc.*,
479 F. Supp. 2d 468 (D.N.J. 2007) ....................................................................................4

*Sprint Nextel Corporation v. Wireless Buybacks Holdings, LLC*,
938 F.3d 113 (4th Cir. 2019) ..............................................................................................7

*Van Cauwenberghe v. Biard*,
486 U.S. 517 (1988)............................................................................................................8

*Viking River Cruises, Inc. v. Moriana*,
596 U.S. 639 (2022)............................................................................................................7

*Walther v. Sovereign Bank*,
872 A.2d 735 (Md. 2005) ....................................................................................................2

**Statutes**

Arbitration Act 1996,

Chapter 23, § 30 (UK) ....................................................................................................4

**Other Authorities**

London Maritime Arbitrators Association, *The LMAA Terms 2021*,
    https://lmaa.london/wp-content/uploads/2022/11/LMAA-Terms-2021.pdf (last
    visited Nov. 12, 2025)..............................................................................................4

1 Williston on Contracts § 1:8 (4th ed.)...........................................................................1

**ARGUMENT**

Plaintiffs have made it easy to resolve this motion.  To start, despite violating this Court's unambiguous requirement that briefs be double-spaced (Indiv. R. II.C.1) and effectively granting themselves five additional pages, Plaintiffs failed to address HHI's case-dispositive argument that they released their claims in the Settlement Agreement and so have waived any opposition to dismissal on that ground.  Plaintiffs also have conceded the elemental facts demonstrating that this dispute belongs in arbitration.  And Plaintiffs' argument that Synergy cannot be compelled to arbitrate this dispute because it is separate from Grace Ocean is in direct conflict with Plaintiffs' central argument in the LoL Action—*i.e.*, that Plaintiffs operate jointly as "owner" of the M/V *Dali* and so both are entitled to limitation of liability.  A stay in favor of the already-initiated LMAA arbitration provides a straightforward resolution.  Finally, Plaintiffs' arguments on *forum non conveniens* and personal jurisdiction are meritless.

## I.    Plaintiffs' Claims Should Be Resolved In Arbitration

Plaintiffs admit, as they must, that (1) Grace Ocean is a party to the Settlement Agreement, (2) Synergy signed the Settlement Agreement, and (3) the Settlement Agreement contains an arbitration provision.  Opp. 16-17.  These undisputed facts suffice to send this dispute to arbitration (or issue a stay in favor of the arbitration HHI has already initiated).

### A.    Synergy Is Bound By The Settlement Agreement It Signed

Plaintiffs first attempt to escape the straightforward conclusion that their (released) claims belong in arbitration by asserting that, despite signing (and stamping its seal on) the Settlement Agreement on its own behalf, Synergy is not bound by it.  *See* Opp. 15-17.  But "in the absence of fraud, mistake, or another vitiating factor, a signature on a written contract is an objective manifestation of assent to the terms set forth there."  1 Williston on Contracts § 1:8 (4th ed.); *see Friedman v. Yula*, 679 F. Supp. 2d 617, 624 n.15 (E.D. Pa. 2010) (a "well-established principle[]

1

of contract law" is that "a party is bound by all of the provisions in the written agreement that it signs as well as the provisions that are expressly incorporated by reference into the contract"); *Walther v. Sovereign Bank*, 872 A.2d 735, 746 (Md. 2005) ("one of the most commonsensical principles in all of contract law" is that "a party that voluntarily signs a contract agrees to be bound by the terms of that contract" (cleaned up)).[1]  Synergy's "signature manifested [its] assent to the entire [Settlement] Agreement, and [it] is bound by the arbitration clause therein." *See Morales v. Sun Constructors, Inc.*, 541 F.3d 218, 223 (3d Cir. 2008); *see also Friedman*, 679 F. Supp. 2d at 624 n.15; *Med. & Health Emps. v. Klein*, 631 N.Y.S.2d 176, 176 (App. Div. 1995).

Plaintiffs do not explain why the Settlement Agreement expressly provided for Synergy to sign "for and on behalf of" itself (which it did) if there was no intent to bind Synergy.  Instead, Plaintiffs rely on the fact that "Synergy is not identified as a 'Party' or any other defined term." Opp. 16.  But they cite no authority for the counterintuitive proposition that the Settlement Agreement's defined terms render Synergy's explicit written assent a nullity. *Id.*  Indeed, case law confirms that "one who has signed an instrument may nevertheless be liable thereon although his name does not appear in the body of the instrument." *Caplan v. Stant*, 154 S.E.2d 121, 123 (Va. 1967).[2]  Plaintiffs' interpretation, on the other hand, would effectively erase Synergy's signature— violating the "settled rule of contract interpretation that contract language should not be interpreted

---

[1]    This principle holds on both sides of the Atlantic. *See, e.g.*, *Internaut Shipping GmbH v. Fercometal SARL* [2003] EWCA Civ 812, [53] ("*Prima facie* a person does not sign a document without intending to be bound under it, or, to put that thought in the objective rather than subjective form, without properly being regarded as intending to be bound under it.").

[2]    *Accord Esselstyn v. McDonald*, 90 N.Y.S. 518, 520 (App. Div. 1904) (multiparty contract for leasing vessel "did not recite the name of [the defendant] as a party," yet "upon affixing his signature and delivering the paper to the owner of the vessel, [the defendant] made himself a party, and became bound as one of the lessees thereunder"); *George v. Tate*, 102 U.S. 564, 569 (1880) ("If one party only be named as obligor in the body of a bond, and others sign it also, all are bound. In no other way can any effect be given to the signatures of those not so named.  The intent is clear, and that is sufficient.").

2

to render the contract promise illusory or meaningless." *Pacemaker Yacht Co. v. NLRB*, 663 F.2d 455, 459 (3d Cir. 1981). Regardless of any defined terms, by signing the Settlement Agreement, Synergy agreed to be bound by the Arbitration Clause incorporated therein.[3]

### B. The Arbitration Clause Delegates Arbitrability To The Arbitrator

As HHI explained (Br. 22-23), by incorporating the Arbitration Act 1996 and the LMAA Rules, the parties agreed to delegate the resolution of any issues regarding arbitrability to the LMAA arbitrator (or tribunal). Plaintiffs argue principally that HHI "ignore[d]" a Ninth Circuit case that "directly and flatly rejects that argument," Opp. 18 (citing *Cape Flattery Ltd. v. Titan Mar., LLC*, 647 F.3d 914, 921 (9th Cir. 2011)), but that decision is both nonbinding and inapposite.

*Cape Flattery* did not address *who* would decide what issues were subject to arbitration, but rather *what law* would govern that determination. *See* 647 F.3d at 921 (distinguishing between the questions of "who should decide arbitrability" and "what law governs arbitrability"). Addressing only the latter issue, the Ninth Circuit held that the relevant arbitration clause—providing that "any dispute arising under this Agreement shall be settled by arbitration in London, England, in accordance with the English Arbitration Act 1996 and any amendments thereto, English law and practice to apply"—did not establish "that the parties agreed to apply English arbitrability law" instead of "federal arbitrability law." *Id.* at 916, 921 (cleaned up). *Cape Flattery* did not consider, let alone decide, whether the parties had agreed that the arbitrator would decide what claims were subject to arbitration; instead, the Ninth Circuit simply decided for itself that the

---

[3] Synergy signed the Settlement Agreement for obvious reasons: Synergy and Grace Ocean operate as a unit (*e.g.*, they bring undifferentiated claims on behalf of both entities here, and, in the LoL Action, Synergy has argued that it is entitled to limit its liability because it jointly plays the role of "owner" of the M/V *Dali*, LoL Action Dkt. 616), and the Credit Note issued to Grace Ocean as consideration for the Settlement Agreement was subject to assignment to an affiliate (namely, Synergy) and similarly was signed by Synergy on its own behalf. *See* Ex. G. at 4, 7.

claims were not.  *See id.* at 921-24; *see also* Opp. 20 (citing two in-district cases that ruled on motions to compel arbitration under clauses incorporating the LMAA Rules without considering, let alone deciding, whether the parties had agreed to arbitrate arbitrability).[4]

HHI does not ask the Court to decide whether "the parties agreed to apply English arbitrability law," so *Cape Flattery*'s central holding is irrelevant.  647 F.3d at 921.  Instead, HHI argues that the parties satisfied the clear-and-unmistakable standard under "*federal* arbitrability law" for delegating arbitrability to the arbitrator, *id.* (emphasis added), by agreeing that the arbitrator would "rule on its own substantive jurisdiction, that is, as to … what matters have been submitted to arbitration," Arbitration Act 1996, c. 23, § 30(1) (UK); *see* London Mar. Arbs. Ass'n, *The LMAA Terms 2021* ¶ 7(a), https://lmaa.london/wp-content/uploads/2022/11/LMAA-Terms-2021.pdf (last visited Nov. 12, 2025) (adopting Arbitration Act 1996); *see also* Br. 22-23. Compared to *Cape Flattery*, then, this case raises a different issue and requires a different answer.

*Brennan v. Opus Bank*, also cited by Plaintiffs, illustrates the distinction.  796 F.3d 1125 (9th Cir. 2015).  There, the Ninth Circuit first addressed *what law* applied and concluded that "federal arbitrability law applie[d]."  *Id.* at 1129.  Then, on the question of *who* decides, the court held that, under federal arbitrability law, "incorporation of the AAA rules constitute[d] clear and unmistakable evidence that [the] contracting parties agreed to arbitrate arbitrability."  *Id.* at 1130. The distinction between *Cape Flattery* and *Brennan* is not, as Plaintiffs would have it, "between

---

4       In *Cape Flattery*, the Ninth Circuit held that the arbitration clause did not encompass the parties' claims because "the phrase 'arising under' in an arbitration agreement should be interpreted narrowly."  647 F.3d at 921.  Here, the Arbitration Clause is broader, providing for arbitration of, among other things, "any dispute or difference … concerning … any matter or thing in any way connected with this CONTRACT or the rights, duties or liabilities of either party under or in connection with this CONTRACT."  Ex. E art. XIV, § 1.  "A clause governing claims 'related to' or 'concerning' the parties' agreement applies to a broader range of claims than a clause governing claims 'arising under' the agreement."  *Schering Corp. v. First Databank, Inc.*, 479 F. Supp. 2d 468, 470-71 (D.N.J. 2007); *see* Br. 23-24; *infra* § I.C.

4

incorporating arbitration rules that specifically delegate arbitrability questions to the arbitrators and merely incorporating a governing law concerning the merits of the claim that purports to do the same," Opp. 19, but rather between the question of *what law* applies and the question of *who* decides. HHI makes only the latter argument here—and Plaintiffs fail to meaningfully address it.

### C.    The Broad Arbitration Clause Covers Plaintiffs' Claims

Even assuming for argument's sake that the Court, rather than the arbitrator, should determine arbitrability, all of Plaintiffs' claims clearly fall within the Arbitration Clause.

Plaintiffs first say that "Grace Ocean is not a party to the Shipbuilding Contract" but fail to explain why this matters. Opp. 20. Plaintiffs admit (as they must) that Grace Ocean is a party to the Settlement Agreement. *Id.* at 17. The Settlement Agreement expressly incorporates "the governing law and arbitration clauses contained in the Shipbuilding Contract." Ex. G ¶ 5.[5] So by entering into the Settlement Agreement, Grace Ocean agreed to be bound by the Arbitration Clause incorporated therein. *See, e.g.*, *Friedman*, 679 F. Supp. 2d at 624 n.15.

Plaintiffs next claim that "HHI fundamentally misconstrues the arbitration clause" because "it is clear that in the context of the Settlement Agreement, 'this CONTRACT' can only be construed as meaning 'the Settlement Agreement.'" Opp. 21. Even if that were right (and Plaintiffs do not show that it is), it would not alter the outcome. On Plaintiffs' preferred understanding, the Arbitration Clause—as incorporated in the Settlement Agreement—reads:

---

[5]    Plaintiffs' discussion of the distinction between "assignment" and "novation" is a distraction. Although HHI does not accept Plaintiffs' apparent argument that, in purchasing the M/V *Dali* from its original owner, they received warranty rights while also arrogating to themselves new rights that were expressly extinguished by those same warranties in the Shipbuilding Contract, *see* Ex. E art. IX, § 4(d) ("The guarantees contained as hereinabove in this Article replace and exclude any other liability, guarantee, warranty and/or condition imposed or implied by statute, common law, custom, contract (including this CONTRACT), or otherwise."), the Court need not determine, for purposes of this motion, the underlying merits of Plaintiffs' claims.

> If any dispute or difference shall arise between the parties hereto concerning any matter or thing herein contained, or the operation or construction thereof, or any matter or thing in any way connected with [the Settlement Agreement] or the rights, duties or liabilities of either party under or in connection with [the Settlement Agreement], then, in every such case, the dispute or difference shall be referred to arbitration in London, England.

*See* Ex. E art. XIV, § 1.  All of Plaintiffs' claims concern both (a) "the operation or construction" of "any matter or thing" contained in the Settlement Agreement, and (b) a "matter or thing in any way connected with" the Settlement Agreement—namely, the condition of the M/V *Dali* at the time it was manufactured.  *Cf.* Br. 23-24 (same under HHI's reading).  Plaintiffs' claims also concern "the rights, duties or liabilities of either party under or in connection with" the Settlement Agreement.  Ex. E art. XIV, § 1.  So regardless of the contract to which "this CONTRACT" refers, the conclusion is the same: all of Plaintiffs' claims fall within the Arbitration Clause's broad scope.

Plaintiffs' other attempts to avoid the Arbitration Clause's plain language are unpersuasive.

*First*, Plaintiffs assume that the scope of the claims released in the Settlement Agreement cabins the scope of the Arbitration Clause, and on that basis argue that the scope of the Settlement Agreement's release is narrow.  Opp. 21-22.  But nothing in the Arbitration Clause—which applies broadly to "*any* dispute or difference … concerning … *any* matter or thing in *any* way connected with this CONTRACT," Ex. E art. XIV, § 1 (emphases added)—suggests it is constrained by the breadth of the release.  And even if it were, the Settlement Agreement's release is broad—HHI paid $170,000 "in full and final settlement of any and all claims and disputes *including* the Vessel's delivery pending items under the Shipbuilding Contract."  Ex. G ¶ 1 (emphasis added).  Plaintiffs italicize the last four words of that sentence, Opp. 21, but the use of the word "including" indicates that this subject of potential claims and disputes is "intended to be illustrative, not exhaustive," *Christopher v. SmithKline Beecham Corp.*, 567 U.S. 142, 162 (2012).  Put differently, claims about "the Vessel's delivery pending items" are only a subset of "any and all claims and disputes" the

6

parties intended to resolve.  Ex. G ¶ 1.  Nor do Plaintiffs move the needle by referencing a recital.

Opp. 21 (quoting (Ex. G ¶ F)).  After all, "recitals are not binding."  *Sprint Nextel Corp. v. Wireless Buybacks Holdings, LLC*, 938 F.3d 113, 127 (4th Cir. 2019).

*Second*, Plaintiffs fault HHI for "not append[ing]" a side letter.  Opp. 22.  But they do not attach the side letter themselves, and HHI's understanding is that none exists.  And even if there were a side letter, the Settlement Agreement itself makes clear that it would merely have carved out specific "obligations and liabilities" from the general release, Ex. G § 2, and so would have no bearing on scope of the Agreement.

*Third*, Plaintiffs quote from *East River Steamship Corp. v. Transamerica Delaval, Inc.*, 476 U.S. 858 (1986), and invoke the "gist of the action" doctrine, seeming to argue that a contractual arbitration agreement cannot apply to a tort claim, *see* Opp. 22-23.[6]  Settled precedent says otherwise, *see, e.g.*, *Marmet Health Care Ctr., Inc. v. Brown*, 565 U.S. 530, 532 (2012) (per curiam), and this argument cannot be reconciled with the broad language of the Arbitration Clause—especially given that "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration," *Chassen v. Fid. Nat'l Fin., Inc.*, 836 F.3d 291, 295 (3d Cir. 2016).

## II.    The Complaint Should Be Dismissed Under *Forum Non Conveniens*

It is common ground that, if a valid arbitration agreement encompasses this dispute, *forum non conveniens* requires dismissal because "an arbitration agreement is a specialized kind of forum-selection clause," *Viking River Cruises, Inc. v. Moriana*, 596 U.S. 639, 653 (2022) (cleaned up), and "a valid forum-selection clause should be given controlling weight in all but the most

---

[6]    *East River Steamship* in fact has no real bearing on this case.  It stands for the principle that, under the economic loss doctrine, a manufacturer does not have tort liability under either a negligence or strict-liability theory for claims of pure economic loss more properly addressed through a "warranty action," in which "a contracting party can seek to recoup the benefit of its bargain."  476 U.S. at 868; *see also id.* at 873.

exceptional cases," *Atl. Marine Constr. Co. v. U.S. Dist. Ct. for W. Dist. of Tex.*, 571 U.S. 49, 63 (2013) (cleaned up). These principles suffice to resolve the *forum non conveniens* question, given that a valid arbitration agreement between the parties encompasses this dispute. *Supra* § I.

Ignoring the dispositive role that the arbitration provision plays here, Plaintiffs instead focus on whether HHI has adequately shown, in the alternative, that Korea is an adequate forum. Opp. 24. But "[t]he substantiative law of the foreign forum is presumed to be adequate unless the plaintiff makes some showing to the contrary, or unless conditions in the foreign forum made known to the court, plainly demonstrate that the plaintiff is highly unlikely to obtain basic justice there." *DTEX, LLC v. BBVA Bancomer, S.A.*, 508 F.3d 785, 796 (5th Cir. 2007) (per curiam); *see also Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 254 n.22 (1981) ("Ordinarily, this requirement will be satisfied when the defendant is 'amenable to process' in the other jurisdiction."). Next, Plaintiffs claim that HHI "fails to undertake any discussion of the private interest factors." Opp. 25. This ignores that HHI expressly invoked multiple private-interest factors in explaining that "many (if not all) of the relevant 'witnesses' and other 'sources of proof' are in South Korea and Singapore (the parties' home countries), half a world away—so trying the case here would be 'cost[lier]' and create numerous 'practical problems.'" Br. 20 (quoting *Piper Aircraft*, 454 U.S. at 241 n.6); *see also Van Cauwenberghe v. Biard*, 486 U.S. 517, 528-29 (1988) ("[*Piper Aircraft*'s] list of considerations to be balanced is by no means exhaustive, and some factors may not be relevant in the context of a particular case."). It is Plaintiffs who fail to provide any account of why (1) Korea is not an adequate forum or (2) even one of the private- or public-interest factors weighs against dismissal for *forum non conveniens*. Opp. 23-25.

## III.    Plaintiffs Have Waived Any Response To HHI's Release-Of-Claims Argument

HHI explained in its opening brief that Plaintiffs, by executing the Settlement Agreement, released their claims against HHI. Br. 24-25. HHI pointed Plaintiffs to the relevant provisions of

the Agreement, their signatures to the Agreement, and supporting case law.  *Id.*  Plaintiffs failed

to address the argument that Grace Ocean released all of its claims, thus waiving any response.

*See Lynch v. Tasty Baking Co.*, 2024 WL 2848295, at *2 (E.D. Pa. June 5, 2024); *Carr v. Travelers

Home & Marine Ins. Co.*, 700 F. Supp. 3d 288, 299 (E.D. Pa. 2023).

Plaintiffs' only passing acknowledgement of HHI's release argument comes in a two-

sentence footnote where Plaintiffs deny that Synergy (but not Grace Ocean) released its claims.

*See* Opp. 17 n.18.  By relegating this assertion to a footnote, Plaintiffs have waived it.  *See John

Wyeth & Bro. v. CIGNA Int'l Corp.*, 119 F.3d 1070, 1076 n.6 (3d Cir. 1997) ("[A]rguments raised

in passing (such as, in a footnote), but not squarely argued, are considered waived."); *cf.* Opp. 25.

And even if the footnote sufficed to mount an opposition, Plaintiffs' sole basis for denying that

Synergy released its claims is that (according to Plaintiffs) Synergy "has not been party to any

settlement agreement with HHI."  Opp. 17 n.18.  That argument is wrong.  As explained before

and above, Synergy is bound by the release (Br. 21, 24-25; *supra* § I.A), and the release resolves

all of Plaintiffs' claims (Br. 25; *supra* § I.C at 6).

**IV.     This Court Lacks Personal Jurisdiction Over HHI**

Plaintiffs concede that consent is the only potential basis for the Court to exercise personal

jurisdiction over HHI and that the only potential consent is the 2002 registration filed by a

corporate predecessor of HHI.  Opp. 2, 6.  Plaintiffs still must establish that exercising personal

jurisdiction based on that registration comports with due process.  They do not.

The analysis properly turns on *Mallory v. Norfolk Southern Railway Co.*, 600 U.S. 122

(2023)—not three terse paragraphs in a century-old case, *see Pa. Fire Ins. Co. of Phila. v. Gold

Issue Mining & Milling Co.*, 243 U.S. 93, 94-95 (1917), or a Third Circuit decision that neglected

even to cite that case, *see generally Bane v. Netlink, Inc.*, 925 F.2d 637 (3d Cir. 1991).  Plaintiffs'

excessively broad reading of these precedents disregards Justice Alito's fact-bound explanation of

9

his *Mallory* vote—facts that, despite Plaintiffs' efforts to muddy the waters, are absent here.[7]  *See* Br. 12-14 (comparing relevant facts); *Mallory*, 600 U.S. at 153-54 (Alito, J., concurring in part and concurring in the judgment) ("I agree that *Pennsylvania Fire* controls our decision here, but I stress that it does so due to the clear overlap with the facts of this case.").  That Justice Alito voted to reverse solely on the facts of *Mallory* explains why his opinion was narrower than the plurality's and thus controlling under *Marks*.  Br. 12.  Indeed, Plaintiffs do not—and cannot—explain why Justice Alito declined to join the portion of the plurality's decision reaffirming *Pennsylvania Fire* if, as they suggest, he agreed with it.  *See Mallory*, 600 U.S. at 136-46 (plurality opinion).

As for the dormant Commerce Clause argument, Plaintiffs fault HHI for "not identif[ying] any controlling legal authority that would render Pennsylvania's statute unconstitutional."  Opp. 11.  But no precedent forecloses it either; *Mallory* expressly left the issue open.  *See* 600 U.S. at 127 n.3.  Plaintiffs fixate on the discrimination method of establishing a violation, *but see* Br. 15-16 (citing *Mallory*, 600 U.S. at 161 n.7 (Alito, J., concurring in part and concurring in the judgement)), but even a facially non-discriminatory statute will violate the dormant Commerce Clause if "the burden imposed on [interstate] commerce is clearly excessive in relation to the putative local benefits," *Pike v. Bruce Church, Inc.*, 397 U.S. 137, 142 (1970).  Pennsylvania's statute flunks this test.  Br. 16-17.

## CONCLUSION

This case should be dismissed or, alternatively, stayed pending arbitration.

---

[7]    The Court should not credit hyperlinks Plaintiffs interject in footnotes, Opp. 4 n.3, 5 n.4, referencing sources not properly subject to judicial notice, in contrast with sworn statements of fact included in HHI's supporting declaration.

Dated: November 12, 2025

Respectfully submitted,

*/s/ Alan Schoenfeld*
Alan Schoenfeld (*pro hac vice*)
Howard M. Shapiro (*pro hac vice*)
WILMER CUTLER PICKERING
  HALE AND DORR LLP
7 World Trade Center
250 Greenwich Street
New York, NY 10007
Telephone: (212) 230-8800
Alan.Schoenfeld@wilmerhale.com
Howard.Shapiro@wilmerhale.com

George P. Varghese (Pennsylvania Bar No. 94329)
Andrés O'Laughlin (*pro hac vice*)
Jacob Tuttle Newman (*pro hac vice*)
WILMER CUTLER PICKERING
  HALE AND DORR LLP
60 State Street
Boston, MA 02109
Telephone: (617) 526-6000
George.Varghese@wilmerhale.com
Andy.OLaughlin@wilmerhale,com
Jacob.TuttleNewman@wilmerhale.com

Christopher Davies (*pro hac vice*)
WILMER CUTLER PICKERING
  HALE AND DORR LLP
2100 Pennsylvania Avenue NW
Washington, DC 20037
Telephone: (202) 663-6000
Christopher.Davies@wilmerhale.com

*Attorneys for HD Hyundai Heavy Industries Co.,
Ltd.*

11

## CERTIFICATE OF SERVICE

I certify that on November 12, 2025, I caused a true and correct copy of the foregoing to be filed through the Court's electronic filing system.

*/s/ Alan Schoenfeld*
Alan Schoenfeld

12