**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **GRACE OCEAN PRIVATE LIMITED, et al.,** | : | |
| *Plaintiffs,* | : | |
| | : | |
| v. | : | **CIVIL NO. 25-4374** |
| | : | |
| **HYUNDAI HEAVY INDUSTRIES CO., LTD.,** | : | |
| *Defendant.* | : | |
| | : | |

**MEMORANDUM**

**Scott, J.**                                                                 **August 3, 2026**

Pending before the Court is Defendant Hyundai Heavy Industries Co., Ltd.'s ("HHI") Motion to Dismiss the Action or, in the Alternative, Stay Pending Arbitration.  ECF No. 37. Plaintiffs Grace Ocean Private Limited ("Grace Ocean") and Synergy Marine PTE LTD.'s ("Synergy") responded to Defendant's Motion. ECF No. 38.  Defendant then replied to Plaintiff's Response.  ECF No. 39.  The Court held a hearing on the Motion on July 9, 2026, during which counsel for the Parties presented oral arguments.  After the hearing, the Parties filed Letters to inform the Court of relevant developments in the case law related to the Motion.  ECF Nos. 47, 48.

For the reasons discussed herein, the Court finds that although it has personal jurisdiction over HHI and that it may exercise such personal jurisdiction consistent with due process of law, it must nonetheless dismiss Plaintiffs' claims on *forum non conveniens* grounds.

## I.      Background

In 2014, HHI built the M/V *Dali* in South Korea and delivered it in early 2015 to Stellar Marine LLC, the vessel's first owner, in the Marshall Islands.  ECF No. 37-1 at 10; *see also* Compl. ¶ 4.  Prior to the vessel's construction, HHI contracted with Stellar Marine to clarify the vessel's

1

construction, delivery, warranties, defects, and liabilities.  ECF No. 37-1 at 9; Ex. E.  That contract also included an arbitration provision that mandated "any dispute or difference . . . between the parties . . . shall be referred to arbitration in London, England."  Ex. E art. XIV, § 1.  The provision further clarified that "[a]ny arbitration arising hereunder shall be governed by and construed in accordance with the Arbitration Act 1996 of England."  *Id.*, § 2.

In 2016, Stellar Marine transferred ownership of the M/V *Dali* to Grace Ocean.  ECF No. 37-1 at 10.  HHI, Grace Ocean, Stellar Marine, and an intermediate buyer entered into a contract to clarify the rights of the parties.  *Id.*; Ex. F.  In 2021, Grace Ocean and HHI entered a Settlement Agreement to resolve further all claims pertaining to the ship's construction and warranty.  *Id.*; Ex. G.  In relevant part, that Settlement Agreement incorporated the arbitration clauses contained in the prior contract.  *Id.*; Ex. G. ¶ 5.

On March 26, 2024, the M/V *Dali* left the Port of Baltimore en route to China as its final destination by way of Sri Lanka.  Compl. ¶¶ 10-11.  The vessel lost power and propulsion while traveling from the port, ultimately striking the Francis Scott Key Bridge, causing it to collapse into the Patapsco River.  *Id.* ¶¶ 12-15; ECF No. 37-1 at 11.  The incident led to the deaths of six construction workers on the bridge and the alleged injuries of two others.  *Id.* ¶ 16.

On April 1, 2024, Plaintiffs initiated a Limitation of Liability proceeding in the United States District Court for the District of Maryland "seeking to limit their liability for the allision under 46 U.S.C. § 30501 *et seq.*"  ECF No. 37-1 at 11.  The court in that action bifurcated the proceedings with the first phase centered on determining the extent of Plaintiffs' liability, and the second phase—if Plaintiffs are found liable—centered on damages.  *Id.* at 11-12.  On September 18, 2025, HHI initiated arbitration against Grace Ocean and Synergy under the London Maritime Arbitrators Association's 2021 Terms, alleging breaches of the Settlement Agreement and seeking

"a declaration of no liability in connection with the claims brought by Plaintiffs in this action." *Id.* at 12; *see also* Ex. H.

On July 31, 2025, Plaintiffs initiated the admiralty and maritime action now before this Court, pursuant to Federal Rule of Civil Procedure 9(h), pursuing six causes of action against HHI: two products liability claims, one breach of implied warranties claim, one negligent misrepresentation claim, one negligence claim, and one indemnity and/or contribution claim. Compl. ¶¶ 1, 6, 15-20. Plaintiffs initiated this action in Pennsylvania because "HHI maintains an agent for the service of process in the State of Pennsylvania and, pursuant to 42 Pa. Cons. Stat. § 5301(a)(2)(i), (b), has consented to be sued in Pennsylvania on any claim." *Id.* ¶ 6. That is because, in 2002, HHI registered as a foreign business corporation in Pennsylvania, thereby consenting to general jurisdiction of Pennsylvania's courts. ECF No. 38 at 9.

## II.      Legal Standard

The Due Process Clause of the Fourteenth Amendment limits a "court's power to exercise jurisdiction over a defendant." *Ford Motor Co. v. Mont. Eighth Judicial Dist. Court*, 592 U.S. 351, 358 (2021). A defendant must have contacts with the forum state such that maintaining the suit is reasonable and comports with "traditional notions of fair play and substantial justice." *Id.* (citing *International Shoe Co. v. Washington*, 326 U. S. 310, 316-17 (1945)). The Supreme Court has established "two kinds of personal jurisdiction: general (sometimes called all-purpose) jurisdiction and specific (sometimes called case-linked) jurisdiction." *Id.* (citing *Goodyear Dunlop Tires Operations, S. A. v. Brown*, 564 U.S. 915, 919 (2011)). General jurisdiction—giving rise to "any and all claims"—exists when a defendant is "essentially at home" in the forum state, whereas specific jurisdiction exists when a  plaintiff's claims "arise out of or relate to the defendant's contacts with the forum." *Id.* at 358-59 (citing *Goodyear*, 564 U.S. at 919; *see also Bristol-Myers*

*Squibb Co. v. Superior Court*, 582 U.S. 255, 272 (2017)). District courts sitting in diversity may only "exercise personal jurisdiction over an out-of-state defendant to the extent permitted by the law of the forum state." *Hasson v. FullStory, Inc.*, 114 F.4th 181, 186 (3d Cir. 2024) (citing *Metcalfe v. Renaissance Marine, Inc.*, 566 F.3d 324, 330, 51 V.I. 1219 (3d Cir. 2009); Fed. R. Civ. P. 4(k)(1)(A)). A party may also give "express or implied consent to the personal jurisdiction of the court." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472-73, n.14 (1985) (*Insurance Corp. of Ireland v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 703 (1982)).

Federal Rule of Civil Procedure 12(b)(2) states that a party may assert lack of personal jurisdiction by motion. Fed. R. Civ. P 12(b)(2). "Although the plaintiff bears the burden of demonstrating the facts that establish personal jurisdiction, in reviewing a motion to dismiss under Rule 12(b)(2), [the court] 'must accept all of the plaintiff's allegations as true and construe disputed facts in favor of the plaintiff.'" *Pinker v. Roche Holdings, Ltd.*, 292 F.3d 361, 368 (citing *Mellon Bank (East) PSFS Nat'l Ass'n v. Farino*, 960 F.2d 1217, 1223 (3d Cir. 1992); *Carteret Sav. Bank, FA v. Shushan*, 954 F.2d 141, 142 n.1 (3d Cir. 1992)) (cleaned up).

### III.    Discussion

#### a.    The Court has personal jurisdiction over HHI

HHI's principal argument is that the Court lacks both general and specific personal jurisdiction over it, thereby necessitating dismissal under Rule 12(b)(2). ECF No. 37-1 at 15. HHI argues that because the M/V *Dali* was "constructed in South Korea and sold to a buyer in the Marshall Islands" before being "purchased by one Singaporean entity and operated by a different Singaporean entity[,]" HHI has insufficient contacts with Pennsylvania to satisfy the requirements for personal jurisdiction. *Id.* at 15-16. HHI further argues that the vessel only "came to the United States without any involvement of HHI, solely as a result of how the vessel's owner and operator

have conducted their businesses." *Id.* at 16.  Accordingly, the argument proceeds, HHI cannot have "purposefully directed any activities toward Pennsylvania that establish personal jurisdiction." *Id.*  Thus, HHI asserts, it is neither at home—and not subject to general jurisdiction—in Pennsylvania, nor has it "purposefully avail[ed] itself of the privilege of conducting activities within" Pennsylvania—and therefore it is not subject to specific jurisdiction. *Id.* at 15-16.

Plaintiffs argue, however, that HHI consented to personal jurisdiction in Pennsylvania. ECF No. 38 at 12-17.  Plaintiffs contend that HHI "unequivocally consented to jurisdiction by registering to do business in Pennsylvania in 2002." *Id.* at 13.  HHI counterargues that its "23-year-old never-used registration by a predecessor entity, unaccompanied by evidence of any actual business in Pennsylvania, is insufficient to establish HHI's consent to personal jurisdiction for the purposes of a 2025 lawsuit based entirely on events that occurred outside Pennsylvania." ECF No. 37-1 at 17.  HHI's position, relying on the Supreme Court's decision in *Mallory v. Norfolk Southern Railway Company*, 600 U.S. 122 (2023), is that Pennsylvania's jurisdiction-by-registration statute, which is the vehicle by which Plaintiffs say HHI consented, does not comport with the due process requirements embedded in a court's ability to exercise personal jurisdiction. *See* ECF No. 37-1 at 17-22.  The Court disagrees with HHI.

In 2002, HHI registered as a foreign corporation in Pennsylvania and its registration was effective when this action was initiated. ECF No. 38 at 17; *Id.* Ex. A. Pennsylvania's jurisdiction-by-registration statute is quite clear in its effect:

> **The existence of any of the following relationships** between a person and this Commonwealth **shall constitute a sufficient basis** of jurisdiction to enable the tribunals of this Commonwealth **to exercise general personal jurisdiction** over such person ... (2) **Corporations (i) Incorporation under or qualification as a foreign corporation under the laws of this Commonwealth** (ii) Consent, to the extent authorized by the consent.

42 Pa. Cons. Stat. § 5301 (emphasis added).

In *Mallory*, the Supreme Court addressed the constitutionality of Pennsylvania's statute. 600 U.S. 122 (2023). The Court, in Part I of the majority opinion, observed that it "agreed to hear this case and decide whether the Due Process Clause of the Fourteenth Amendment prohibits a State from requiring an out-of-state corporation to consent to personal jurisdiction to do business there." 600 U.S. at 127. In Part III-B, the Court, again in a majority opinion, observed—by reaffirming its holding in *Pennsylvania Fire Ins. Co. v. Gold Issue Mining & Milling Co.*, 243 U.S. 93 (1917)—that where a defendant "registered to do business in Pennsylvania, [] established an office there to receive service of process, and that in doing so it understood it would be amenable to suit on any claim[,]" jurisdiction under the statute comports with due process of law. *Id* at 135.

HHI asserts that Justice Alito's concurrence in that case is "narrower than the plurality's position and therefore controlling." ECF No. 37-1 at 20. But the Court's opinion—which Justice Alito joined—is not as fractured as HHI purports. Thus here, where HHI registered to do business in Pennsylvania, designated an in-state agent to receive service, and the "Commonwealth approved the application, conferring on [it] both the benefits and burdens shared by domestic corporations— including amenability to suit in state court on any claim," the Court is hard-pressed to deny a finding of general personal jurisdiction. *Id.* Especially given the level of sophistication of HHI's operations throughout the years, HHI either knew of the effect of the statute but now seeks to downplay it or should have known of the effect but failed to withdraw its registration due to its own oversight. Either way, "[i]t is enough to acknowledge that the state law and facts before us fall squarely within *Pennsylvania Fire*'s rule." *Id.* at 135. The Court therefore agrees with the Plaintiffs that it enjoys personal jurisdiction over HHI.

6

**b. HHI fails to demonstrate that the Pennsylvania statute violates the Dormant Commerce Clause**

HHI's next line of defense is that, "[e]ven if this Court were to determine that applying Pennsylvania's registration statute here would not offend due process, the Complaint should be dismissed because Pennsylvania's consent-by-registration statute separately violates the Dormant Commerce Clause." ECF No. 37-1 at 22. HHI's argument proceeds in two parts: First, the statute "violates the Clause's prohibition on laws that discriminate against out-of-state companies." *Id.* Second, "even if it did not expressly discriminate against out-of-state companies, Pennsylvania's registration statute violates the dormant Commerce Clause because 'the burden imposed on [interstate] commerce is clearly excessive in relation to the putative local benefits.'" *Id.* at 23 (citing *Pike v. Bruce Church, Inc.*, 397 U.S. 137, 142 (1970); *Nat'l Pork Producers Council v. Ross*, 598 U.S. 356, 403 (2023)) (alterations in original).

The United States Constitution provides that the "Congress shall have power to . . . regulate commerce with foreign nations, and among the several states, and with the Indian tribes[.]" U.S. Const., art. I, § 8, cl. 3. "Although the Clause thus speaks in terms of powers bestowed upon Congress, the [Supreme] Court long has recognized that it also limits the power of the States to erect barriers against interstate trade." *Lewis v. B.T. Inv. Managers, Inc.*, 447 U.S. 27, 35-36 (1980) (citing *Hughes v. Oklahoma*, 441 U.S. 322, 326 (1979); *Philadelphia v. New Jersey*, 437 U.S. 617, 623 (1978); *H. P. Hood & Sons, Inc. v. Du Mond*, 336 U.S. 525, 534-538 (1949); *Cooley v. Board of Wardens*, 12 How. 299 (1852)). Absent conflicting federal law, states may, "under their general police powers [] regulate matters of 'legitimate local concern,' even though interstate commerce may be affected." *Id.* at 36. But states may not "discriminat[e] against articles of commerce coming from outside the State unless there is some reason, apart from their origin, to treat them differently. *Id.*

7

HHI has "[t]he burden to show discrimination [as] the party challenging the validity of the statute[.]" *Hughs v. Oklahoma*, 441 U.S. 322, 336. HHI fails to meet its burden here. HHI's reasoning that the statute violates the Dormant Commerce Clause is cursory and almost entirely based on Justice Alito's concurrence in *Mallory*. But the Supreme Court in *Mallory* does not itself address the Dormant Commerce Clause. The Court's holding—which did garner five votes— focuses only on the due process considerations of the statute. *See Mallory*, 600 U.S. at 134-135 (holding that "*Pennsylvania Fire* controls this case. . . . *Pennsylvania Fire* held that suits premised on these grounds do not deny a defendant due process of law.). This Court will not read into the majority's opinion Justice Alito's dicta that focuses on the Dormant Commerce Clause. This Court therefore agrees with Plaintiffs:

> HHI has not identified any controlling legal authority that would render Pennsylvania's statute unconstitutional. Instead, HHI's argument on this point hangs entirely on Justice Alito's partial concurrence (in which <u>no other Justice joined</u>) musing that the statute **may** fail under the commerce clause, if the statute does somehow discriminate against out of state companies or excessively burden interstate commerce. HHI's total reliance on Alito's partial concurrence falls far short of the burden HHI must meet to succeed on this constitutional question. Language "contained in a concurrence" does not "constitute[ ] binding precedent." *Maryland v. Wilson*, 519 U.S. 408, 412–13 (1997).

ECF No. 38 at 18. (emphasis in original.)

In a similar case where firearms manufacturer Sig Sauer was sued in Pennsylvania under the same consent-by-registration statute, our Court held that "exercising general personal jurisdiction here, based on Sig Sauer's registration as an out-of-state corporation in a case brought by at least two Pennsylvanians, does not offend the Dormant Commerce Clause." *Blade v. Sig Sauer, Inc.*, 25-6645, 2026 U.S. Dist. LEXIS 45018, at *15 (E.D. Pa. Mar. 5, 2026). This Court reaffirms that holding today.

### c.  The Court must nonetheless dismiss the action based on *forum non conveniens*

Despite finding that that the Court maintains personal jurisdiction over HHI and that HHI

has not established that Pennsylvania's consent-by-registration statute violates the Dormant Commerce Clause, the Court nonetheless finds that it must dismiss this action on *forum non conveniens* grounds.

HHI argues that the Complaint should be dismissed because the Parties "have agreed to a valid forum-selection clause." ECF No. 37-1 at 24. HHI contends that the Court "may dismiss an action on the ground that a court abroad is the more appropriate and convenient forum for adjudicating the controversy." *Id.* (citing *Sinochem Int'l Co. v. Malay. Int'l Shipping Corp.*, 549 U.S. 422, 425 (2007)). The Court may do so, HHI continues, "when considerations of convenience, fairness, and judicial economy so warrant." *Id.* (citing *Sinochem Int'l Co.*, 549 U.S. at 432). HHI also posits that, "[e]ven if there were not a binding forum-selection clause, forum non conveniens dismissal still would be warranted in favor of South Korea's courts." *Id.* at 26-27 (citing *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 241 n.6 (1981)). HHI's position is that South Korea is an "adequate alternative forum" because much of the witnesses and evidence are in South Korea and Singapore. *Id.* at 27.

HHI "bears the burden of persuasion as to all elements of the forum non conveniens analysis." *Lacey v. Cessna Aircraft Co.*, 932 F.2d 170, 180. "This burden comprises two basic elements. The defendant must establish, initially, that an adequate alternative forum exists as to all defendants. If the defendant satisfies this burden, it must then show that the private and public interest factors weigh heavily in favor of dismissal." *Id.* (listing private and public interest factors) (internal citations omitted). The first element is satisfied when the defendant is "amenable to process in the other jurisdiction." *Id.* (citing *Piper*, 454 U.S. at 254 n.22). Next, when there is a valid forum-selection clause, "[a] court accordingly must deem the private-interest factors to weigh entirely in favor of the preselected forum." *Atl. Marine Constr. Co. v. United States Dist. Court*,

571 U.S. 49, 64 (2013).  Thus, under such circumstances, "a district court may consider arguments about public-interest factors only" and "those factors will rarely defeat a transfer [request]."  *Id.*

The first element is satisfied here.  HHI has amply demonstrated that it is amenable to process in London.  Plaintiffs argue, however, that "HHI fails to undertake any discussion of the private interest factors relevant to the FNC analysis."  ECF No. 38 at 32.  The Court disagrees.  As discussed herein, there is a valid forum-selection agreement which controls the private-interest analysis.  Plaintiffs disagree that Synergy is bound by the forum-selection provision in the Settlement Agreement and, necessarily, that the provision controls the private-interest analysis. *Id.* at 31; *see also* ECF No. 37-1 at 25 (discussing the forum-selection provision).  Plaintiffs posit that "[n]owhere does the [Agreement] discuss any claims, rights, or obligations belonging to or running against Synergy. And nor does Synergy obtain any benefit whatsoever from HHI and Grace Ocean's Settlement Agreement." *Id.* at 23.  Instead, Plaintiffs assert, Synergy merely signed the contract under the "prefatory language" of it being a witness to the Agreement. *Id.* at 23-24.

The issue with Plaintiffs' argument is that both Grace Ocean and HHI also placed their signatures under that "prefatory language." *See* ECF No. 37, Ex. G at 3.  It is not at all evident from the language of the contract that only Synergy was intended to be a witness although all three signed in the same place and only HHI and Grace Ocean are named in the body of the Agreement. The Court agrees with HHI that Grace Ocean and Synergy—which was hired to "manage and operate the Vessel"—appear to "operate as a unit."  ECF No. 38 at 8; ECF No. 39 at 8 n.3; *see also* Compl. ¶¶ 2-3 (describing co-Plaintiffs Grace Ocean as "Owner was the registered owner of the M/V DALI" and Synergy as having "substantial control of and exercised dominion over the Vessel.").  Thus, "[i]f one party only be named as obligor in the body of a bond, and others sign it also, all are bound. In no other way can any effect be given to the signatures of those not so named.

10

The intent is clear, and that is sufficient." *George v. Tate*, 102 U.S. 564, 569 (1880); *see also Parks v. Brinkerhoff*, 2 Hill 663, 664 (1842) ("The note sufficiently expresses a consideration, but purports, on its face, to bind the Company alone. It is then signed by the president and agent, whose names are followed by the signatures of the defendants in the place where we should look for those names, had they been expressly mentioned as sureties. . . . They do not declare themselves agents or witnesses. They must have meant to be makers or nothing.").

Accordingly, the Court finds that Synergy is bound by the terms of the Settlement Agreement. Given that, the Court also finds that the forum-selection provision is valid and the provision controls the private-interest analysis which favors dismissal based on *forum non conveniens*. In addition, HHI addresses the public-interest factors sufficiently, which Plaintiffs fail to do, instead opting to focus only on the purported invalidity of the forum-selection provision and private-interest factors. *See* ECF No. 37-1 at 25-26; ECF No. 38 at 32 (focusing only on HHI's "fail[ure] to undertake any discussion of the private interest factors relevant to the FNC analysis"). Even though the public-interest factors will "rarely defeat a transfer [request]" when there is a valid forum-selection clause, the Court must still consider the arguments raised by a plaintiff. *Atl. Marine Constr. Co.*, 571 U.S. at 64. But Plaintiffs here failed to raise such arguments. As Plaintiffs note themselves, "[a] party 'must unequivocally put its position before the trial court at a point and in a manner that permits the court to consider its merits.'" ECF No. 38 at 32 (citing *Shell Petroleum, Inc. v. U.S.*, 182 F.3d 212, 218 (3d Cir. 1999)). Without doing so—as is the case here—the argument is considered waived.

The Court therefore concludes that HHI has met its burden in establishing that dismissal is warranted based on *forum non conveniens*.

## IV.    CONCLUSION

The Court holds that it is sufficient to dispose of the Motion based on its findings that (i) it has personal jurisdiction over HHI, (ii) maintaining personal jurisdiction comports with due process of law, (iii) HHI has not established that Pennsylvania's jurisdiction-by-registration violates the Dormant Commerce Clause, and (iv) dismissal is warranted based on *forum non conveniens*.  An appropriate Order accompanies this Memorandum.